Leif Eric HELLSTROM, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 90–SC–262–MR.

Supreme Court of Kentucky.

Jan. 16, 1992.

Rehearing Denied April 9, 1992.

Larry H. Marshall, Asst. Public Advocate, Dept. of Public Advocacy, Frankfort, for appellant.

Chris Gorman, Atty. Gen., Lana Grandon, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

Opinion of the Court by Justice LEIBSON reversing and remanding as to Issue I and dissenting opinion by Justice LEIBSON as to Issues II and III.

Leif Eric Hellstrom appeals as a matter of right from his conviction in the Jessamine Circuit Court for first-degree sodomy and first-degree sexual abuse of his adopted stepdaughter. Punishment was

set at imprisonment for 45 years and five years, respectively, to run consecutively for a total of 50 years.

Appellant moved in with Janice Jenkins and her four-and-one-half-year-old daughter, C.H., in November, 1981. Some 18 months later, Janice and Hellstrom married and thereafter they had two additional daughters. In late November 1986, the family moved to Jessamine County. In that same year, Hellstrom adopted C.H.

On June 25, 1989, while Janice and C.H. were flying home from a family reunion in South Dakota, Janice told her daughter that she had decided to divorce Hellstrom, who did not accompany them on the trip. Some two hours after arriving home from the flight, C.H., then eleven years old, confided to her mother that Hellstrom had been sexually abusing her for several years. C.H. said she had not told her mother of the abuse earlier because she did not want to cause her mom to get a divorce.

The next morning Janice went to the state police and later took her daughter to see a social worker. In time, C.H. also saw a child protection investigator, the director of the Child Abuse Clinic at the Department of Psychiatry of the University of Kentucky's Medical Center, and a family practice physician for an evaluation. According to C.H., her stepfather began touching her in her "private area" when she was about five years old. She also alleges Hellstrom had her perform fellatio on him and he performed oral sex on her. She said these acts occurred about three times a week when she was eight and nine years old. The incidents grew less frequent and ultimately stopped in September 1988, when C.H. was ten years old.

During the two-day trial on December 28 and 29, 1989, C.H. testified at length. The Commonwealth also called: her mother, Janice; a police sergeant; the child protection investigator; the director of the UK Child Abuse Clinic; and the evaluating physician. The appellant took the stand in his own behalf and also called seven witnesses. He denied ever having had any sexual contact with C.H. and testified he did not know

why the child made these allegations, and maybe his wife had "her hand into it."

The appellant raises six claims of error, three of which will be discussed in this Opinion. The three remaining claims are not sufficiently serious to merit discussion, and are rejected.

I

The principal issue, and the sole grounds for reversal, concerns the testimony of Mr. Lane Veltkamp, the director of the Child Abuse Center at the UK Medical Center. Mr. Veltkamp is not a psychologist or psychiatrist, but has his Masters degree in clinical social work. After Veltkamp had two or three sessions with C.H., he determined that she needed treatment and he continued to treat her as an out-patient. At the time of trial, he had seen C.H. eight times.

Over appellant's objection on grounds of hearsay and relevancy, the trial court permitted Veltkamp to testify on direct examination, in part, as follows:

"... she's [C.H.] been traumatized and she had a number of symptoms and she was very much in need of treatment.... She was having bad dreams, she was having a great deal of anxiety and anger. She was distrusting of men, she was having stomach complaints, nervous symptoms."

Mr. Veltkamp further testified that "delayed disclosure" is common in these kinds of cases. He explained: "[A] child who's been victimized *in this way* by a *member of her family* is afraid obviously to tell anybody about it...." [Emphasis added.] The prosecutor asked, "Did you find that to be true with respect to [C.H.'s] case?" Veltkamp answered affirmatively.

Both sides recognize that we have reversed a number of cases because of trial error in permitting the use of testimony regarding the so-called "child sexual abuse accommodation syndrome" to bolster the prosecution's case. *Bussey v. Commonwealth*, Ky., 697 S.W.2d 139 (1985); *Lantrip v. Commonwealth*, Ky., 713 S.W.2d 816 (1986); *Souder v. Commonwealth*,

Ky., 719 S.W.2d 730 (1986); *Hester v. Commonwealth*, Ky., 734 S.W.2d 457 (1987); and *Mitchell v. Commonwealth*, Ky., 777 S.W.2d 930 (1989).

The prosecution argues that no testimony whatever was heard by this jury regarding the child sexual abuse accommodation syndrome. The appellant argues that Veltkamp's testimony related the "child sexual abuse accommodation syndrome" without actually calling it that; that because the Commonwealth failed to show the syndrome has recognized scientific reliability, the testimony consisted of nothing more than hearsay repetition of vague symptoms as described by the complaining witness to the clinical social worker; and that Mr. Veltkamp, as a social worker, was not qualified to express his views on the results of his investigation. *See Souder v. Commonwealth, supra* at 734.

In our most recent case on this subject, *Brown v. Commonwealth*, Ky., 812 S.W.2d 502 (1991), a social worker testified that the victim's behavior was "consistent with abuse." Citing *Lantrip v. Commonwealth, supra* and *Hester v. Commonwealth, supra*, our Court stated "the social worker testified as to the components of the syndrome but did not label the theory," and held this grounds for reversal. *Id.* at 504.

The American Heritage Dictionary defines "syndrome" as "a group of signs or symptoms that collectively indicate or characterize a disease, psychological disorder, or other abnormal condition." Mr. Veltkamp listed the symptoms but refrained from classifying them directly as the "child sexual abuse syndrome." Avoiding the term "syndrome" does not transform inadmissible hearsay into reliable scientific evidence. Neither the syndrome nor the symptoms that comprise the syndrome have recognized reliability in diagnosing child sexual abuse as a scientific entity. *Lantrip v. Commonwealth, supra.* Nor is Mr. Veltkamp, as a social worker, qualified to express an opinion suggesting this child was suffering from a psychological disorder or other abnormal mental condition. Thus the testimony remains inadmissible.

Mr. Veltkamp is well trained and experienced as a social worker, and as such serves as Director of the Child Abuse Center at the University of Kentucky Medical Center. But he is neither a physician, a psychiatrist, nor a psychologist, trained in diagnosing the cause of a child's mental disturbance. In *State v. Rimmasch*, 775 P.2d 388 (Utah 1989), the Utah Supreme Court notes that even ...

"Psychologists and psychiatrists are not ... experts at discerning the truth. Psychiatrists are trained to accept facts provided by their patients, not to act as judges of patients' credibility." *Id* at 406.

This same legal reasoning applies with much greater force to the testimony of a social worker, however well qualified. Mr. Veltkamp based his opinion that C.H. in fact had these symptoms on "what this child [C.H.] has *told* me; it's based on *observing* her affect and her feelings; it's based on my experience in this field ...; it's based on the detail and vividness in which she *described* what happened to her." [Emphasis added.] Mr. Veltkamp's subjective conclusion improperly vouched for the truth of C.H.'s out-of-court statements. Mr. Veltkamp did not qualify as an expert on the credibility of the child and the reliability of statements she made while he was evaluating her. His testimony was not probative of whether sexual abuse occurred and he invaded the province of the jury by determining witness credibility and expressing his unqualified opinion on the ultimate issue. The admission of his testimony was reversible error.

## II

The second issue concerns the testimony of Dr. Kearl. The majority of this Court would affirm on this issue (see Opinion by Spain, J.), and the remainder of this section expresses the dissenting opinion of the author with two Justices concurring.

Dr. Kearl was inaccurately characterized as the "family physician." On the contrary, Dr. Kearl may have been a physician engaged in family practice, but he came into this case as part of the team evaluat-

ing the criminal complaints against this appellant. C.H. was referred to Dr. Kearl a month *after* the alleged abuse was reported. Dr. Kearl interviewed C.H. and performed an external examination of her vaginal areas for evaluation purposes in connection with the charges made against the appellant.

Dr. Kearl testified he found a very thin vaginal scar. He then stated that the scars "were consistent with sexual abuse that she [C.H.] described to me."

The trial court considered Dr. Kearl's testimony admissible under the hearsay exception for "statements made for the purpose of medical diagnosis or treatment" as recently explained in *Drumm v. Commonwealth,* Ky., 783 S.W.2d 380 (1990). In *Drumm* we adopted FRE 803(4), which eliminates a distinction using as the sole criterion whether the doctor is a treating or evaluating physician. However, we carefully explained that in doing so we accept the "approach" applied by former Associate Justice Lewis Powell of the United States Supreme Court in *Morgan v. Foretich,* 846 F.2d 941 (4th Cir.1988). Justice Powell recognizes that the testimony of an evaluating physician "has less inherent reliability than evidence admitted under the traditional common-law standard underlying the physician treatment rule." *Id.* at 952. This means that before admitting hearsay testimony from an evaluating physician, the trial court should make a threshold determination that medical history reported by the physician was given in circumstances with reliability similar to those which exist in a physician-patient relationship. Such circumstances were not shown in this case. Dr. Kearl's testimony should have been limited to physical findings, and he should have been restricted from repeating the hearsay furnished him under the pretext of medical history.

### III

Finally, the last issue we will discuss concerns admitting into evidence as exhibits drawings made by C.H. during the investigation of the charges. The drawings portrayed various sexual acts between a man and a young child. C.H. had written labels on parts of the anatomy on the sketches and captions explaining the pictures. The majority of this Court would affirm on this issue (see Opinion by Spain, J.), and the remainder of this section expresses the dissenting opinion of the author with two Justices concurring.

These drawings constituted out-of-court statements offered for the truth of the matter asserted. A statement includes oral or written expression and nonverbal conduct of a person, if it is intended as an assertion. It certainly includes drawings and descriptions on the drawings. In *Souder v. Commonwealth, supra,* the Court held the testimony of a social worker discussing the child's demonstrations using an "anatomically correct" doll was inadmissible hearsay. In this case C.H.'s written words, as well as her illustrative sketches, were intended by her to be assertions explaining past events. Thus the pretrial drawings were inadmissible hearsay.

The error in admitting this hearsay was not cured when C.H. identified and explained the statements in court subject to cross-examination. The evidence remains objectionable because the declarant was not subject to cross-examination *at the time* the statements were made, nor was the declarant a witness before the jury when they were made. These conditions are necessary to insure the statements were originally made *without improper influence or suggestion*[1] and to give the jury the opportunity to observe the demeanor of the declarant while making the statement. These are the dangers of hearsay, which are not eliminated by providing the declarant at trial. They can only be eliminated by not introducing the out-of-court statement (the drawing) into evidence. If drawings would be helpful in presenting the child's testimony, the appropriate alternative is for the child to draw pictures as

---

1. We note that one of C.H.'s written statements seems to read more like a coached confession than an eleven year old's personal explanation.

visual aids contemporaneously with her testimony in court. Visual aids are a part of the witness' testimony but they are not a substitute for testimony, nor are they admitted as exhibits.

Optimally, *every* person who criminally abuses a child, physically or sexually, would be caught, convicted, and punished appropriately for the offense. But the rules of evidence have been developed painstakingly over centuries to insure, to the extent it is humanly possible, the reliability of convictions. The rules of evidence cannot be overlooked, set aside, or circumvented in our zeal to convict. We appreciate and applaud the work of social workers and prosecutors committed to a worthy cause, but in a court of law *the ends never justify the means*. Thus it is our responsibility to overturn their well-meaning efforts to find ways around the rules of evidence to obtain a conviction in this type of case.

STEPHENS, C.J., and COMBS, LAMBERT and LEIBSON, JJ., concur in Part I of this Opinion, and, accordingly, the within case is reversed and remanded on this ground.

SPAIN, J., dissents by separate Opinion as to Part I, and is joined by REYNOLDS and WINTERSHEIMER, JJ.

LAMBERT, J., joins in the Opinion by Justice SPAIN as to Parts II and III, and thus Justice SPAIN's Opinion is the Majority Opinion on these two issues.

Dissenting Opinion by Justice SPAIN as to Issue I and Opinion of the Court by Justice SPAIN Affirming as to Issues II and III.

### I.

Respectfully, I dissent from the majority's reversal of appellant's conviction by reason of Issue I, concerning the testimony of Mr. Lane Veltkamp, the director of the Child Abuse Center of the Department of Psychiatry at the University of Kentucky Medical Center. The trial judge ruled that Mr. Veltkamp was an expert in his field of clinical social work based upon his bachelor's and master's degrees in social work and his twenty-three years' experience as a therapist, researcher, and writer, during which he has evaluated and treated over one thousand children and testified in court over one hundred times.

C.H. was referred to Mr. Veltkamp by the medical school's Department of Family Practice in July 1989, since which time he has evaluated and treated her on eight visits to the Child Psychiatry Outpatient Clinic. He testified that C.H. had been traumatized, had a number of symptoms, and was very much in need of treatment. He described her symptoms (characterized editorially as "vague" by the majority) of experiencing bad dreams, having a great deal of anxiety and anger, being distrustful of men, having stomach pain complaints, and of delaying disclosure of her complaints of sexual abuse. He further stated that it was not unusual for sexually abused children sometimes to delay in reporting such incidents, and explained reasons why they did so. This was the extent of his testimony on direct examination by the prosecution. Appellant objected on the grounds that his testimony was based on hearsay from C.H. and was not relevant to the charges against appellant. It also is argued that "delayed disclosure" is often listed as a symptom of the controversial child sexual abuse accommodation syndrome and that this Court has repeatedly condemned testimony about the existence of such a syndrome, citing *Mitchell v. Commonwealth*, Ky., 777 S.W.2d 930 (1989), *Hester v. Commonwealth*, Ky., 734 S.W.2d 457 (1987), *Lantrip v. Commonwealth*, Ky., 713 S.W.2d 816 (1986), and *Bussey v. Commonwealth*, 697 S.W.2d 139 (1985).

The prosecution responds that no testimony whatever was heard by this jury regarding the syndrome and that the trial judge alluded to *Bussey* and to *Souder v. Commonwealth*, Ky., 719 S.W.2d 730 (1986), when he overruled appellant's objections to Mr. Veltkamp's proffered opinion testimony. I agree. Both the Commonwealth and the trial court attempted with great care not to let this case degenerate

into another overturned sexual abuse accommodation syndrome exercise. According to the majority, they did not succeed. To me, Mr. Veltkamp was clearly qualified as an expert to express his opinions about his patient, C.H., whom he was treating, and to explain his view as to why she did not complain to her mother earlier about her allegations of Hellstrom's sexual abuse of her. The prosecution correctly anticipated that appellant would emphasize this delay while cross-examining C.H., necessitating Mr. Veltkamp's testimony about delayed disclosure.

The remaining complaints of appellant have to do with opinions elicited from Mr. Veltkamp solely on cross-examination by defense counsel, *not* on direct examination by the Commonwealth. It was in this questioning that Veltkamp opined that C.H. had indeed been sexually abused by appellant. As we said in *Estep v. Commonwealth*, Ky., 663 S.W.2d 213 (1983); "One who asks questions which call for an answer has waived any objection to the answer if it is responsive. 1 Wigmore, *Evidence*, Sec. 18, p. 344 (3rd ed.1940); *See West v. Commonwealth*, 273 Ky. 779, 117 S.W.2d 998 (1938).)" Apparently by his skilled cross-examination, defense counsel succeeded in eliciting enough tainted syndrome evidence to get this conviction reversed by the majority. What ever happened to "waiver"?

## II.

■ Appellant's next claimed error centered on testimony offered by Dr. Gary Kearl, a family physician, regarding his physical examination of C.H. Appellant concedes that this issue was not preserved for review; however, even if it had been, the majority of the Court holds there was no error. A physician can certainly express a medical opinion as he did here that the physical changes, including thickening and scarring observed in the external genitalia of a patient, were consistent with complaints of sexual abuse including prodding of the genitals.

## III.

■ The third claimed error concerned the introduction into evidence of drawings and contemporaneous captions accomplished by C.H. in the presence of her mother and a police officer at the time she gave her statement and on another occasion a few days later. (Commonwealth Exhibits # 1, 2, 3, and 4.) Only Exhibit # 4 was objected to at trial. While it is true that the writings were out-of-court statements offered for their truth, and thus hearsay, they were identified and explained by the child victim during her in-court testimony and thus were merely cumulative evidence. Furthermore, she was subject to full cross-examination thereon. The error in admitting the exhibits, if any, was harmless in the opinion of this Court's majority. Similarly harmless was the testimony of C.H.'s mother, the policewoman, and the child abuse investigator as to actions taken by them following C.H.'s allegations. Moreover, there were no contemporaneous objections made at trial to preserve the issue.

REYNOLDS and WINTERSHEIMER, JJ., concur in this dissent as to Part I.

LAMBERT, REYNOLDS and WINTERSHEIMER, JJ., concur in Parts II and III and thus the trial court is affirmed on these two grounds.

LEIBSON, J., dissents by separate opinion as to Parts II and III and is joined by STEPHENS, C.J., and COMBS, J.