Joshua HALL, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 92–SC–106–MR.

Supreme Court of Kentucky.

Sept. 30, 1993.

Larry H. Marshall, Asst. Public Advocate, Dept. of Public Advocacy, Frankfort, for appellant.

Chris Gorman, Atty. Gen., Sharon Kay Hilborn, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENS, Chief Justice.

Appellant appeals as a matter of right from his convictions by a jury in Knott Circuit Court on one count of first-degree sodomy and one count of first-degree sexual abuse. He was sentenced to life imprisonment for first-degree sodomy and five years' imprisonment for first-degree sexual abuse, to be served consecutively. Appellant presents several allegations of error, two of which constitute grounds for reversal.

The facts of the case are the following: T.H., the niece of the appellant, who was six years old at the time of the alleged abuse, told her aunt that her stepfather had sexually molested her. On November 16, 1989, this aunt contacted the CHR regarding this matter and an investigation ensued. After the investigation, four men, including appellant and the stepfather were indicted for various sex crimes committed against T.H. and her younger brother, C.H., age three.

■ Appellant's first claim is that the trial court committed reversible error by allowing a psychologist intern to testify, over objection, as follows: (1) that in her professional opinion T.H. was sexually abused; and (2) that in her opinion T.H. was telling the truth in her accusations of abuse against appellant.

At trial, Barbara Ballou, a clinical psychologist, was called by the prosecution to testify. She testified with respect to her evaluation of T.H. and C.H. on September 11, 1990, the purpose of which was to attempt to determine whether the children had been sexually abused. Ms. Ballou had evaluated the children when she was a student intern.

During Ms. Ballou's direct examination, counsel for appellant requested a bench conference. At the conference, the following exchange occurred:

MR. FAUST (defense counsel): [I]f she's going to testify as to the credibility of the child and whether she believes that what she says is true, that goes to the ultimate issue of credibility that the tryers (sic) of

fact, the jury, would determine. And certainly she's not competent to testify to it.
MR. SLONE (prosecutor): Your Honor, I think we all know that that old distinction about testifying on the ultimate issue is no longer of law. An expert can testify on those issues.

After the bench conference in which the trial court overruled defense counsel's objection, Ms. Ballou's testimony proceeded to the following pertinent exchange:

Q 27. MR. SLONE: So if I can clarify, what you're telling me is that if the child makes the same statement over and over, does that suggest to you that it is more true than if maybe she changed things?
A. MS. BALLOU: If a child over a long period of time reports as facts, as things that happened to them, things that are very very similar, it makes it pretty likely that those are things . that happened to them.... So if children are repeating something that they're saying has happened to them and they repeat it consistently over time, it's highly likely that it's accurate.
Q. 29. When you say "accurate," what do you mean by that?
A. That what she was reporting was what she believed happened.

The general rule is that opinion evidence, in order to be admissible, must not decide an ultimate issue of fact. *Mitchell v. Commonwealth*, Ky., 777 S.W.2d 930, 935 (1989); *Hellstrom v. Commonwealth*, Ky., 825 S.W.2d 612, 614 (1992). Despite the fact that in seven recent cases,[1] this Court has reversed convictions for alleged sexual offenses against children because of improper and prejudicial expert testimony, this issue continues to resurface. By this time, the law in Kentucky should be clear. In the case of a psychologist or social worker, "testimony ... of whether sexual abuse has occurred ..." is impermissible, as these experts are simply not "qualified to express an opinion" that a person has been sexually abused. *Id.* at 617.

1. *Bussey v. Commonwealth*, Ky., 697 S.W.2d 139 (1985); *Lantrip v. Commonwealth*, Ky., 713 S.W.2d 816 (1986); *Souder v. Commonwealth*, Ky., 719 S.W.2d 730 (1986); *Hester v. Commonwealth*, Ky., 734 S.W.2d 457 (1987); *Mitchell v.* *Commonwealth*, Ky., 777 S.W.2d 930 (1989); *Brown v. Commonwealth*, Ky., 812 S.W.2d 502 (1991); *Hellstrom v. Commonwealth*, Ky., 825 S.W.2d 612 (1992).

As to any expert (including medical doctors), "vouch[ing] for the truth of [a victim's] out-of-court statements ... invades the province of the jury," and is likewise impermissible. *Id.* at 614.

Accordingly, it was improper for Ms. Ballou to give her opinion that the children had been sexually abused. Although a licensed psychologist at the time of trial, she evaluated the children while she was a clinical *student intern* under the supervision of Mr. Lane Veltkamp, the Director of the Child Abuse Center at the University of Kentucky Medical Center. It should go without saying that if it is not within the expertise of Mr. Veltkamp to give an opinion on the fact of whether alleged sexual abuse has occurred, then *a fortiori*, it is not within the expertise of a student under his direction. See *Id.* at 614.

█ It was also clearly improper for Ms. Ballou to testify that in her opinion T.H.'s testimony was most likely accurate. Even had Ms. Ballou been a licensed psychologist at the time she examined the children, she would "not have qualif[ied] as an expert on the credibility of the child and the reliability of statements she made while she was evaluating her." *Hellstrom, Id.* at 614. In *Hellstrom,* we embraced the view of the Utah Supreme Court on this specific question:

> "[These witnesses] are not ... experts at discerning the truth. [They] are trained to accept facts provided by their patients, not to act as judges of patients' credibility." *State v. Rimmasch,* 775 P.2d 388 (Utah 1989).

Furthermore, the prosecutor emphasized this testimony in his closing argument by stating that, "Miss Ballou, the psychologist who interviewed T.H. on a couple of occasions, told you that what T.H. told you was the truth." The majority of this court has held that the admission of this type of testimony is reversible error. *Hellstrom, Id.* Therefore, we reverse on this issue.

█ Next, appellant argues that he was prejudiced by the prosecutor's use as affirmative proof in his case-in-chief, the fact that appellant remained silent at the time of his arrest. This error was properly preserved for review. On *two* occasions during his direct examination of Detective Hogg, the prosecutor called attention to appellant's failure to give a statement at the time of his arrest:

Q.20 Did the defendant make any statements to you?

A. No, sir.

Q.21 Did you read him his rights at that time?

A. Yes, Sir, I did.

Q.22 So no statements were made?

A. None.

The Commonwealth admits that error occurred with respect to this issue, but urges this Court to find that the error was harmless. Primarily arguing that this case is factually analogous to *Green v. Commonwealth,* Ky., 815 S.W.2d 398, 400 and *Niemeyer v. Commonwealth,* Ky., 533 S.W.2d 218 (1976), the state contends that since "the evidence was sufficient to convict the appellant regardless of whether the error had occurred or not," this error is not grounds for reversal. We disagree.

It is clear that the prosecution is prohibited from using the defendant's silence in its case-in-chief. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). As previously mentioned, the fact of appellant's silence was twice brought to the attention of the jury.

To determine whether this error is harmless, we must consider the weight of the evidence and the degree of the punishment fixed by the verdict. *Niemeyer* at 222. In the instant case, the evidence against appellant can be fairly characterized as no better than weak. There exists no physical evidence linking appellant to the charged offenses. There were no other witnesses to the alleged abuse. In contrast to the solid evidence in *Green* and *Niemeyer,* the jury's guilty verdict here depends heavily upon the credibility of a child-complainant, as bolstered by inadmissible expert testimony.

Finally, the jury sentenced appellant to the maximum punishment, life in prison. In short the Commonwealth failed to prove beyond a reasonable doubt that the complained-of error did not contribute to the verdicts

obtained. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

This is, unquestionably, an error of fundamental constitutional magnitude. Over twenty-five years ago the United States Supreme Court in *Miranda* held that a defendant could not be penalized for exercising his or her Fifth Amendment right to remain silent. In *Green,* we reaffirmed that principle, stating that "the right to remain silent does not truly exist if one may be penalized for its exercise ..." It is the obligation of this Court not to uphold a verdict that may reflect such a penalty.

Next, appellant argues that the trial court erred when it allowed Dr. Artie Bates to testify that in her opinion the complainants had been sexually abused. Appellant argues that Dr. Bates based her opinion on the history that T.H. gave her, "her behavior in not being at all bashful about revealing her genitalia," and the physical findings she made with respect to the children. Appellant concedes that this issue was not preserved for review. Thus we need not address this contention.

Appellant also argues the trial court erred when it allowed the introduction of investigative hearsay from the social worker and detective. Again, because appellant concedes that this issue is not preserved for review, the Court declines to consider it.

Appellant's next contention is that the trial court erred when it allowed into evidence testimony that the appellant considered irrelevant. The allegedly irrelevant material consisted of the prosecutor's recitation of the charges against appellant, the testimony of the investigating health care professionals that the victims had been sexually abused by other persons than the appellant, the mentioning that there were "dirty books" in appellant's living quarters which the appellant showed to the victims, and the question on cross-examination whether the appellant had exposed himself to anyone else in his family. This issue is not preserved.

■ Appellant's claim that the Commonwealth failed to prove venue is meritless. Further, we disagree with appellant's claim that the evidence was insufficient to establish the charge of sodomy against T.H. It was not clearly unreasonable for the jury to have found guilt in this case.

■ Finally, it was erroneous for the judgment to run the sentence of life imprisonment for first-degree sodomy consecutively with the sentence of five years' imprisonment for first-degree sexual abuse because this is prohibited by KRS 532.110(1)(c), which states that:

> When multiple sentences of imprisonment are imposed on a defendant for more than one (1) crime, ... such sentences shall run concurrently or consecutively as the court shall determine at the time of sentence, except that:
>
> c) The aggregate of consecutive indeterminate terms shall not exceed in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed.

*See Shannon v. Commonwealth,* Ky., 562 S.W.2d 301 (1978); *Hendley v. Commonwealth,* Ky., 573 S.W.2d 662 (1978).

However, since we have decided to reverse and remand this case for a new trial, the question is moot.

The judgment of the Knott Circuit Court is reversed and the cause remanded for a new trial.

COMBS, LAMBERT, LEIBSON, REYNOLDS and WINTERSHEIMER, JJ., concur.

SPAIN, J., concurs in result only.