Matt Demetrius TURNER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 94–SC–974–DG.

Supreme Court of Kentucky.

Jan. 18, 1996.

Daniel T. Goyette, Of Counsel, Jefferson District Public Defender, J. David Niehaus, Deputy Appellate Defender of the Jefferson District Public Defender, Louisville, for appellant.

Chris Gorman, Attorney General, Carol C. Ullerich, Assistant Attorney General, Criminal Appellate Division, Frankfort, for appellee.

STUMBO, Justice.

This appeal arises from the judgment of conviction of Appellant, Matt Demetrius Turner, for first-degree sexual abuse, for which he received a sentence of imprisonment for five years.

Appellant was charged with fondling an 11–year–old girl and rubbing his genitals against her on August 1, 1991. Appellant's defense was one of denial. The child/victim testified at trial, as did several other witnesses called by the Commonwealth, including two expert witnesses—Dr. Paige Hertwig and Dr. Carole Brees—who had individually examined the child/victim subsequent to the sexual abuse. The physicians stated that their examinations of the child/victim were normal, but that such negative findings of physical scarring, tears, etc., did not necessarily indicate that the sexual abuse complained of did not occur. Over Appellant's objection, the physicians were allowed to testify that, in their medical opinions, such negative physical findings were consistent with the medical history presented by the child/victim.

The jury found Appellant guilty of first-degree sexual abuse, and the trial court, upon denying Appellant's request for probation, imposed a prison sentence of five years. The Court of Appeals affirmed Appellant's conviction, holding, in part, that "[i]t was relevant and important for the jury to know that not all child sexual abuse necessarily results in definitive physical findings and that the lack of findings does not conclusively prove that sexual abuse never occurred."

Appellant raises three arguments on appeal to this Court: the testimony of the physicians was irrelevant and improperly bolstered the trial testimony of the child/victim; Appellant was wrongly denied probation because he refused to admit guilt; and the trial judge was without authority to exclude a member of Appellant's family from the courtroom.

Although certain aspects of the trial court proceedings are somewhat troublesome, the judgment of conviction stands affirmed.

The crux of Appellant's argument focuses on the testimony of the two physicians. Appellant claims that the trial court erred in permitting these two witnesses to testify as to whether or not the results of their examinations of the child/victim were consistent with her allegations of sexual abuse. The physicians were the Commonwealth's first and fifth witnesses, and preceded the testimony of the child/victim. Appellant presents a two-pronged objection to the admission of the physicians' testimony: first, that it was irrelevant; and second, that it was improper opinion testimony vouching for the veracity of the child/victim.

Dr. Hertwig, a University of Louisville Medical School professor, took the stand first and testified that she performed a follow-up examination on the child/victim on August 20, 1991. The physician recited the medical history given to her by the child/victim during this examination, and noted that the child/victim told her that Appellant had rubbed his genitals against the genitals of the child/victim. Dr. Hertwig further testified that the physical evaluation of the child/victim was basically normal for a pubertal patient. As part of its direct examination,

the prosecution asked the physician the following question:

Within reasonable medical probability, in your professional opinion Dr. Hertwig, is [the child/victim's] statement as to what happened to her consistent with your evaluation?

The physician answered, "It can be, yes." On cross-examination, counsel for Appellant was able to establish that Dr. Hertwig saw no physical indications in the nature of abrasions, bruisings, lacerations, enlargement, scarring, tears, or distortions on the genitals of the child/victim. Dr. Hertwig also testified that the absence of any physical finding would be consistent with either abuse having occurred or not having occurred.

The testimony of Dr. Brees, an OB/GYN resident on call at Children's Hospital when the child/victim was brought in for an initial examination, was substantially similar to that of Dr. Hertwig. Dr. Brees recited the details of sexual abuse recounted to her by the child/victim and stated that her examination revealed no abrasions, bleeding, or lacerations which needed to be stitched; that there was no discharge; and that the child/victim's pelvic organs were normal for a girl of her age. After further discussion of the physical evaluation, Dr. Brees was asked by the prosecutor the following question:

Within reasonable medical probability, is [the child/victim's] statement consistent with the findings on your evaluation?

To this, Dr. Brees responded, "I would have to say it's not inconsistent." On cross-examination, Appellant again pointed out that there were no physical manifestations of abuse.

■ Appellant first argues that, pursuant to KRE 402, which states that "[e]vidence which is not relevant is not admissible," the matter of whether or not the allegations by the child/victim were consistent with the physicians' findings was not relevant to the real issue in the case: whether or not Appellant had rubbed his genitals against the child/victim. We, however, are not convinced that this testimony was without relevancy. First, as we elaborate below, this testimony did not serve merely to verify the truthfulness of the child/victim. Second, this testimony related

to the physicians' evaluations of the child/victim viz-a-viz her allegations of sexual abuse, and served to establish that an absence of physical findings did not necessarily indicate that such abuse had not occurred. As such, this testimony clearly falls within the definition of relevancy articulated in KRE 401 and explained by the following passage from Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 2.05, at 53 (3d ed. 1993) (citing Cleary, *McCormick on Evidence,* at 542–543 (3d ed. 1984)):

> An item of evidence, being but a single link in the chain of proof, need not prove conclusively the proposition for which it is offered. It need not even make that proposition appear more probable than not.... It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence. Even after the probative force of the evidence is spent, the proposition for which it is offered still can seem quite improbable.

Consistent with this issue of relevancy, the second prong of Appellant's argument focuses on what effect this testimony had on the trial proceedings, and in particular, on the subsequent testimony of the child/victim. Appellant relies upon our holdings in *Hall v. Commonwealth,* Ky., 862 S.W.2d 321 (1993), and *Alexander v. Commonwealth,* Ky., 862 S.W.2d 856 (1993), for the proposition that no expert witness may testify so as to vouch for the truth of a victim's out-of-court statements, as such testimony impermissibly invades the province of the jury. Without backing away from our decisions in those cases, we hold that *Hall* and *Alexander* are unpersuasive to the disposition of this matter.

In *Hall,* a psychologist intern testified, in a case involving the sexual abuse of a six-year-old, that in her professional opinion, the child/victim was telling the truth in her accusations against Appellant. We held such testimony improper based upon a conclusion that the intern was not qualified as an expert on the credibility of the child/victim. We also found that it was reversible error to allow the prosecution to emphasize this testimony in closing arguments by stating to the jury, "the psychologist who interviewed [the child/victim] on a couple of occasions, told you that what [the child/victim] told you was the truth." *Id.* at 323. In *Alexander,* another case involving the sexual abuse of a minor, an examining physician testified that the injury to the hymenal ring of the child/victim was consistent with the allegations of sexual abuse the child/victim had recounted in her medical history. We held that the admission of such "highly prejudicial" testimony constituted reversible error in that the physician "clearly gave an opinion that appellant was guilty of rape." *Id.* at 862.

Today, we walk a fine line, but a line nonetheless, in distinguishing the case at bar from *Hall* and *Alexander.* Unlike in *Hall,* the physicians herein did not testify to support the truthfulness of the allegations of the child/victim. The testimony of Drs. Hertwig and Brees was concerned mostly with their examinations of the child/victim and their evaluations of her medical history. While the intern in *Hall* testified that statements made by the child/victim were "accurate," the physicians in this matter merely testified as to the issue of consistency between their evaluations and the allegations of the child/victim. Before we stand accused of quibbling over semantics, we stress that the difference between *Hall* and the case at bar lies in the substance of the testimony of the respective experts. In *Hall,* the intern, during direct examination by the prosecution, decisively testified that, in her opinion, the testimony of the child/victim was most likely accurate, in "[t]hat what she was reporting was what she believed happened." *Id.* at 322. In contrast, Drs. Hertwig and Brees were ambivalent in their responses to the prosecution's "consistency" question. Answers such as "it *can* be" and "it's *not inconsistent* " surely cannot be taken as blanket endorsements of the truthfulness of the child/victim's allegations. Furthermore, the prosecution's closing argument in this case, which simply noted that both physicians had testified that their evaluations of the child/victim were "both consistent and inconsistent" with the medical history of the child/victim, does not rise to that level of impermissibility as did the prosecution's closing argument in *Hall,* which relied quite

heavily upon the intern's assertion of the veracity of the child/victim's allegations.

To distinguish this matter from *Alexander*, we note that the physician's testimony in *Alexander* served to articulate his opinion that, based upon the physical examination of the child/victim, it was Appellant who committed the crime. Such was not the case here, as the physicians testified that they had found no physical evidence of abuse, and, thus, such statements cannot rightly be interpreted as expressing an opinion on Appellant's guilt. We further emphasize that this testimony, unlike that in *Alexander*, involved an examination of the child/victim which proved to be negative, revealing no physical manifestations of sexual abuse—a fact Appellant was able to convey on cross-examination. It is difficult, indeed, to perceive reversible error where evidence could be used in Appellant's favor as surely as it could be used against Appellant. Finally, while we appreciate Appellant's argument that jurors afford great weight to the testimony of those held out as experts, we must not underestimate a jury's intelligence in its ability to discern between the multitude of evidence and testimony presented to it and to evaluate such accordingly. We hold that the testimony of the experts herein was not so inundated with prejudice as was that in *Hall* and *Alexander*, and that what, *if any*, error which may have resulted in its admission remained harmless, mostly because the bulk of the physicians' testimony that preceded the statements at issue and by which the usual intelligent and able jury could base a finding of guilt.

■ Appellant's next point of contention involves the sentencing proceedings, in which the trial judge indicated that probation was being denied because of Appellant's failure to admit that he had done "something wrong." Appellant argues that the trial judge's rationale herein amounted to requiring an admission of guilt from Appellant as a prerequisite to the granting of probation, which Appellant maintains is not only morally wrong, but infringes upon his right to appeal under Section 115 of the Kentucky Constitution. While it is not entirely clear from a review of the record whether the trial judge sought from Appellant a direct admission of guilt or just some acknowledgement of remorse, it stands to reason that in light of Appellant's continued denial of the crime for which he was convicted, any indication of remorse on Appellant's part could be inferred as an admission of guilt.

■ We deny Appellant's request for reversal or, in the alternative, resentencing, on this issue based solely upon the trial judge's reliance on KRS 533.010 during the sentencing phase. According to this statute, "[b]efore imposition of a sentence of imprisonment, the court shall consider the possibility of probation, probation with an alternative sentencing plan, or conditional discharge." KRS 533.010(2). After considering both the nature of the crime and the history of the defendant, the trial court should grant probation unless to do so would place the public in danger based upon a consideration of the following factors contained within KRS 533.010(2):

(a) There is substantial risk that during a period of probation, probation with an alternative sentencing plan, or conditional discharge the defendant will commit another crime;

(b) The defendant is in need of correctional treatment that can be provided most effectively by his commitment to a correctional institution; or

(c) A disposition under this chapter will unduly depreciate the seriousness of the defendant's crime.

While Appellant contends that the trial judge erred by denying probation on a basis other than that provided in KRS 533.010, it is clear that the trial judge, in arriving at his decision, did, in fact, recite to those factors contained within KRS 533.010(2), albeit while placing great weight upon Appellant's failure to acknowledge wrongdoing—for example, by noting that a consideration of said factor would tend to indicate, per the language of KRS 533.010(2)(a), that there was a substantial risk Appellant would commit another crime while on probation. Nevertheless, Kentucky case law holds that the determination of whether or not to grant probation is left to the discretion of the trial court, in that "under KRS 533.010, the statutory require-

ment is that the court *should* grant probation or conditional discharge within the guidelines established by the statute." *Brewer v. Commonwealth,* Ky., 550 S.W.2d 474, 477 (1977). Furthermore, the commentary to KRS 533.010 states that "[i]t is to be acknowledged that the trial court must be granted substantial discretion in deciding upon the disposition of convicted offenders. This section provides criteria to guide the court in the exercise of that discretion by listing the legitimate reasons for imposing a sentence of imprisonment." Based upon an evaluation of the sentencing proceedings, we can find no abuse of discretion by the trial judge in denying Appellant probation. The judge focused not only on Appellant's unapologetic attitude, but also considered Appellant's previous conviction for wanton endangerment and testimony both for and against the granting of probation, including statements by the mother of the child/victim who noted that not only did Appellant not exhibit any remorse, but, rather, seemed to exude an air of arrogance.

■ While we uphold the five-year sentence handed down to Appellant, it behooves us to address the trial judge's continued insistence, during sentencing, that Appellant acknowledge wrongdoing. We suspect that part of the judge's rationale here was based upon the fact that without such an acknowledgment, Appellant could not obtain the requisite counseling for sexual offenders—a circumstance the judge termed a "Catch 22." We recognize that the Commonwealth, pursuant to the conditions for parole contained within KRS 439.340(10), requires sexual offenders to complete the Sexual Offender Treatment Program, and that such a requirement, as a condition precedent to parole, has passed constitutional muster in other jurisdictions. *See, e.g., White v. People,* 866 P.2d 1371 (Colo.1994). We also understand that in order for such a program to have any beneficial effect on a sexual offender, the offender must possess that state of mind conducive to seeking treatment. *Henderson v. Florida,* 543 So.2d 344, 346 (Fla.Dist.Ct. App.1989). This is not unlike the attitude one must have in seeking treatment for any other type of problem—for example, drug or alcohol abuse—in which the first step on the

road to recovery is to admit that one has a problem. Those jurisdictions with treatment programs for sexual offenders similar to that of Kentucky have interpreted this to require that the sexual offender acknowledge committing the crime before being allowed entrance into the program. *See, e.g., State v. Carrizales,* 191 Wis.2d 85, 528 N.W.2d 29, 32 (Ct.App.1995). While we do not take issue with any of this, since no constitutional challenge is before this Court, we are concerned here with what could be interpreted as a trial judge interjecting himself into this rehabilitation process during final sentencing. It is not the role of the trial judge to serve as the gatekeeper of the Sexual Offender Treatment Program by eliciting admissions of guilt from sexual offenders seeking probation. We caution the trial courts not to lose sight of their duty to preside over a court of law in which one's guilt or innocence is to be adjudicated, and not coerced. The clearing of one's conscience in order that the process of rehabilitation may begin is an undertaking best left to the counselors and other professionals who administer the Sexual Offender Treatment Program and who are well-educated in the treatment of such individuals.

■ Finally, Appellant argues that the trial judge was without authority to exclude Appellant's three-year-old daughter from part of the trial. Appellant contends that not only did this amount to a denial of his constitutional right to a public trial, U.S. CONST. amend. VI; KY. CONST. § 11, but that such action was in clear contravention with the language of RCr 9.50, which states:

> In any trial for rape, attempted rape, seduction, unlawfully detaining a woman and similar offenses the judge may exclude from the courtroom, and from the hearing of the testimony and arguments, all infants under the age of sixteen years, *except* those who are witnesses in the case or *kin to one of the parties.* (emphasis added).

We are unpersuaded by Appellant's arguments here and hold that this issue does not merit reversal. Removal of one child from a portion of a trial is hardly equivalent to closing the courtroom to the public. The situation herein is analogous to that in *Wil-*

*son v. Commonwealth,* Ky., 836 S.W.2d 872 (1992), in which we upheld the removal from the courtroom of an attorney/spectator who had attempted to make contact with the defendant, against the court's admonition. In *Wilson,* we stated that "[t]he exclusion of one person from the remainder of cross-examination of the last witness in the guilt phase of a trial can hardly be characterized as a denial of a public trial. There is no question present invoking denial of a public trial." *Id.* at 884–885. Additionally, while the trial judge's basis for removing the child from the proceedings is not entirely clear from a review of the record, such an action, whether prompted by the child's disruptive behavior or by particularly explicit testimony, or by both, cannot be deemed to be outside of the judge's authority to uphold order in the courtroom. Furthermore, with regard to application of RCr 9.50, we agree with the Commonwealth's argument that such a strict reading of the rule as Appellant would have us adopt would greatly undermine a judge's ability to maintain decorum during a trial and would allow a defendant's family members to be as disruptive as they pleased without being subject to removal, merely because of their relationship to the defendant.

For the reasons set forth above, the judgment of conviction is affirmed.

LAMBERT and REYNOLDS, JJ., concur.

EDWIN I. BAER, S.J., concurs.

STEPHENS, C.J., GRAVES and WINTERSHEIMER, JJ., concur in result only.