RENDERED:  JUNE 26, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0768-ME

T.B.G.[1]                                                                                       APPELLANT


APPEAL FROM SIMPSON FAMILY COURT
v.        HONORABLE G. SIDNOR BRODERSON, JUDGE
ACTION NO. 22-J-00055-002


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES;
COMMONWEALTH OF KENTUCKY;
S.R.; AND N.B.T.G., A MINOR CHILD                            APPELLEES


OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, ECKERLE, AND TAYLOR, JUDGES.

ECKERLE, JUDGE:  Appellant, T.B.G. (hereinafter "Father"), seeks review of the

Simpson County Family Court's January 31, 2025, order[2] adjudicating his son

---

[1]  Pursuant to Court of Appeals Administrative Order No. 2006-10, to protect the privacy of minors, we refer to parties in dependency, neglect, and abuse ("DNA") cases by initials only.

[2]  As made final by the Family Court's February 27, 2025, dispositional order.  *J.E. v. Cabinet for Health & Family Servs.*, 553 S.W.3d 850, 852 (Ky. App. 2018).

N.B.T.G. (hereinafter "Child") to be a neglected or abused child. After careful review of the briefs, record, and law, we vacate and remand for further proceedings consistent with this Opinion.

I.      **Factual and Procedural History**

Child was born in October 2019, and he lived with both of his parents until S.R. (hereinafter "Mother") and Father separated in 2021. Thereafter, Child had sporadic visitation with Father. On June 18, 2023, when he was approximately three-and-a-half years of age, Child stayed overnight with Father. On June 23, 2023, Mother filed the underlying DNA petition alleging that Child had disclosed to her and his maternal grandmother that he had been forced to touch Father's penis; that Father had urinated on him; that they had taken a bath together; and that Father had touched his penis. Mother also contacted the police, who investigated, and Child underwent a forensic interview at the Children's Advocacy Center of Kentucky (hereinafter "CACK").

Father agreed to Child being placed in Mother's temporary custody and to having no contact with Child pending the proceedings. The adjudication hearing in this matter was delayed, at least initially, to allow Child to engage in ordered mental health treatment. That hearing commenced on September 25, 2024, and was concluded on January 29, 2025. During the hearings, the Family Court heard testimony from Child's treating therapist, Mother, a psychologist, the

police detective who investigated the allegations, and Father. Father had also subpoenaed the CACK forensic interviewer as well as a child advocate who was present for the interview, but the Family Court quashed the subpoenas, stating that it would not admit their testimony into evidence.

The therapist testified that she was a certified social worker and licensed mental health therapist trained and certified in trauma-focused cognitive behavioral therapy ("TF-CBT"). The therapist met with Child weekly for 45 minutes from September of 2023, three months after the alleged incident, until April of 2024. She asserted that during sessions Child was generally happy, calm, cooperative, and engaged in therapy. However, when she attempted to broach upon the allegations, she stated that Child became resistant and guarded, his face would turn red, and he stated often that he would not talk about it and that the topic made him feel mad. The therapist recounted that, after discussing the difference between good and bad touches, Child said Father touched his penis, and he colored the corresponding area on a blank outline of a body. When asked for details, Child said that it happened at Father's house, and he drew a bathtub while talking about it.

The therapist also testified generally that, in her experience, children who have been sexually traumatized are often "resistant" and "guarded," terms she repeated, when describing those events because they re-experience the painful

emotions. She asserted that children who report an inappropriate touch display significant shifts in demeanor and big emotional involvement, whereas a child reporting an appropriate touch would not be so resistant or guarded in discussing the incident. The therapist admitted that she was not an investigator and that it was outside her scope of employment to determine the factual accuracy of Child's claims. However, she immediately responded thereafter that, yes, she believed something inappropriate had happened to Child involving Father and cited Child's emotional involvement. She denied that it was part of her job to assess whether Child was being truthful but stated that she had no reason not to believe Child and no reason to believe that Child was coached on what to tell her. She opined that Child's behavior was consistent with a child that had suffered trauma and stated that Child had not recanted. The therapist confirmed that Child had stated in his CACK interview, which she had reviewed, that Father had asked him to touch the Father's penis. However, she stated that neither this allegation nor the claim that Father had urinated on Child were disclosed during treatment.[3]

Mother testified regarding Child's visit to Father's home from June 18, 2023, to the following day. She asserted that Father called her twice on June 19th, reporting to her that Child wanted to come home, and that she could hear

---

[3] The record is unclear if the latter claim was made during the CACK interview, although it appears from Father's brief that it may have been.

Child crying in the background of the calls. Ultimately, Father dropped Child off at Mother's work, voluntarily abbreviating the planned visit. Mother described Child's demeanor before the visit as happy and playful, and she stated that he loved baths. However, after he returned from Father's care, Mother maintained that Child only wanted to sit on the couch and did not want to play or talk. When bathtime came, she stated that Child just stood there crying; he would not sit in the tub; he did not want his maternal grandmother, who helped with baths, in the room; and he did not want to play. Mother reported that this aberrant behavior continued for three to four months. Mother denied that Child had ever complained about her bathing technique and asserted that she routinely helped him with his hygiene by cleaning his genitals without issue. This testimony concluded the Commonwealth's proof.

Father presented testimony from a licensed psychologist and cognitive behavior therapist with 28 years of experience. The psychologist had not met Child, but he stated his belief that children under four years of age would be incapable of remembering a traumatic event because they lack the necessary brain development, and this could affect the reliability of disclosures made during treatment. The psychologist expressed his doubts that TF-CBT would be effective given Child's age and stated that there was a risk that, if Child had not been abused, the therapy itself could be traumatizing. The psychologist noted that he

did not know whether Father was properly bathing Child or whether Child's change in demeanor when discussing the allegations was a normal expression of emotion related to being separated from Father, assuming Child was bonded with Father. The expert was not permitted to opine whether Father had abused Child, the Family Court sustaining the objection that the testimony went to the ultimate issue.

The police detective testified next, and he was qualified as an expert based on his training and experience investigating crimes against children. The detective recounted his investigative efforts, which included: talking to the parents, arranging and viewing Child's CACK interview, conducting a controlled phone call where Mother, in the detective's presence, called Father and informed him of Child's claims, and reporting his findings to the Commonwealth's Attorney. The detective stated that Child's behavior during the entirety of the CACK interview was normal and playful, and that Child did not appear timid or afraid. The detective was not permitted to opine whether he believed abuse occurred or whether he thought Child or Father had been truthful. The detective noted that the Commonwealth's Attorney had presented the case to the grand jury, but it resulted in no true bill.

Father testified as the final witness. He stated that for a significant period prior to his separation from Mother, he was Child's primary caregiver,

meeting Child's basic needs, which included bathing. Father recounted that he had received custody of Child in the evening of June 18, 2023, and when he awoke the following morning Child had wet the bed that they were sharing. Father stated that he and Child then bathed together and that he had cleaned Child's genitals with a washcloth. Father asserted that Child behaved normally except that he missed Mother and was upset to be separated from her, which is the reason that he ended the visit prematurely. Father expressed no difficulties with his relationship with Mother. Father admitted on cross-examination that allegations of sexual misconduct had been made against him when he was a minor.

Thereafter, the Family Court ruled from the bench, determining that Child was abused and neglected because Father had committed an act of sexual abuse against him. Kentucky Revised Statutes ("KRS") 600.020(1)(a)5. The Family Court issued a conforming adjudication order on January 31, 2025, and Father timely appealed from the subsequent dispositional order. We will discuss additional facts as necessary.

## II. Analysis

We begin by addressing the many briefing deficiencies in Father's brief. In contravention of Kentucky Rules of Appellate Procedure ("RAP") 32(A)(4), Father's counsel failed to provide preservation statements at the beginning of his arguments, to include relevant citations to the record, to fully

develop his arguments, or to provide even a single legal citation in his opening brief.[4]  The latter two deficiencies are especially glaring given that evidentiary issues are of critical importance in this case and counsel failed, in both the proceedings before the Family Court and in his appellate briefs, to make any argument based in law.  Additionally, counsel openly cited to facts not included in the record and made unfounded inferences and arguments that lack candor.[5]

This Court has three options to address a party's noncompliance with the RAPs:  ignore the deficiency, strike the brief in whole or in part; or review only for manifest injustice.  *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021).  We have opted to review for manifest injustice only.  "Manifest injustice is error [that] so seriously affect[s] the fairness, integrity, or public reputation of the proceeding as to be shocking or jurisprudentially intolerable."  *W.H.J. v. J.N.W.*, 705 S.W.3d 55, 59 (Ky. App. 2024) (quoting *Iraolo-Lovaco v. Commonwealth*, 586 S.W.3d 241, 245 (Ky. 2019)) (alterations in original) (internal quotation marks omitted).

The Family Court made the following findings in support of its determination that Child was abused or neglected:  (1) Child's reports to his

---

[4]  Counsel did cite and superficially apply two provisions of the Kentucky Rules of Evidence ("KRE") in the reply brief.

[5]  For example, Appellant's counsel erroneously claimed that he had preserved an evidentiary issue by his contemporaneous objection and, without any basis in record, repeatedly characterized Child's allegations as "patently false."

maternal grandmother, Mother, his treating therapist, and to the forensic interviewer were consistent; (2) Child exhibited behavioral changes, presumably following his return from Father's care; (3) Child's therapist did not believe Child was coached; (4) Child became upset when discussing the incident, presumably during therapy; and (5) during the CACK interview, Child stated that Father had asked him to touch Father's genitals.

Regarding the Family Court's first finding, of consistency in Child's disclosures, we must note that the maternal grandmother did not testify in the underlying proceedings (and neither did Child). Thus, the finding that Child's reports to her were consistent with his reports to others, is not based upon any admissible evidence. Second, Mother properly did not testify to Child's hearsay statements. Third, Child alleged in his CACK interview acts that differed from or were in addition to the sole disclosure he made in therapy. Accordingly, the Family Court's finding is not supported by the evidence.

Moreover, the Family Court relied on improper hearsay and opinion evidence, albeit evidence that was entered without objection, in rendering its decision. This type of evidence is nonetheless improper, and the Family Court should not have even allowed it into evidence.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter

asserted." KRE 801(c). "Hearsay is not admissible except as provided by [the KRE] or by rules of the Supreme Court of Kentucky." KRE 802.

It is long-settled law that a child's disclosures in a forensic interview are hearsay if introduced to prove the truth of the matter asserted and are not admissible absent a recognized exception. *See Stringer v. Commonwealth*, 956 S.W.2d 883 (Ky. 1997); *Smith v. Commonwealth*, 920 S.W.2d 514, 516-17 (Ky. 1995); *Souder v. Commonwealth*, 719 S.W.2d 730, 732-35 (Ky. 1986). Here, no exception applies that would permit introduction of Child's statement in the CACK interview that Father had asked him to touch his penis. The CACK interview was conducted days after the alleged event as part of the police investigation, precluding admission as an excited utterance or a statement made for the purposes of medical treatment. KRE 803(2) and (4). Further, because Child did not testify, the CACK allegation was not admissible as a prior statement of the witness. KRE 801A. Accordingly, Child's CACK statement was not proper evidence on which the Family Court could rely.

"Generally, a witness may not vouch for the truthfulness of another witness." *Stringer*, 956 S.W.2d at 888; *see also Stephens v. Commonwealth*, 680 S.W.3d 887, 900 (Ky. 2023) (a witness cannot "vouch for the truthfulness of another witness either directly or indirectly"). As the Kentucky Supreme Court recently reiterated, the prohibition against improper and prejudicial bolstering was

-10-

plainly set out 30 years ago in *Hall v. Commonwealth*, 862 S.W.2d 321, 322 (Ky. 1993), and yet the issue continues to resurface. *Boggs v. Commonwealth*, 718 S.W.3d 651, 661 (Ky. 2025).

Here, the Family Court relied on the therapist's opinion that Child was not coached. The *Boggs* Court determined that the nearly identical testimony from a forensic interviewer, namely that the children exhibited no indicators of coaching when they disclosed sexual abuse allegations, contravened the long-held prohibition against improper bolstering evidence. *Id.* at 662-64 (plurality opinion of three Justices with two Justices concurring that the testimony was improper bolstering but disagreeing that the error was harmless). Although the testimony here was from a treating therapist and not a forensic interviewer, the difference is immaterial when, plainly, the purpose of the testimony was to give professional credence to Child's statement.[6]

Compounding this error, the therapist also testified that, in her professional opinion, Child's behaviors during treatment were consistent with that of a child who had experienced sexual trauma. Thus, she inferred that something

---

[6] In addition to opining that Child had not been coached, a subjective belief on which the Family Court expressly relied, the therapist also stated that she had no reason not to believe Child. This too is improper bolstering. Mental health professionals are not "experts at discerning the truth. [They] are trained to accept facts provided by their patients, not to act as judges of patients' credibility." *Hall*, 862 S.W.2d at 323 (internal quotation marks and citation omitted).

inappropriate had happened involving Father.[7]

Evidence of "behavior or conduct that is within the understanding of ordinary personal experience [is] admissible when it is probative of a fact in issue." *Blount v. Commonwealth*, 392 S.W.3d 393, 397 n.3 (Ky. 2013). However, "a party cannot introduce evidence of the habit of a class of individuals . . . to prove that the person was a member of that class *because* he/she acted the same way under similar circumstances." *Miller v. Commonwealth*, 77 S.W.3d 566, 572 (Ky. 2002). Further, "social workers and psychologists are not qualified to testify that they believe a child has been sexually abused based on the child's demeanor." *B.B.*,

---

[7] We also note that hearsay identifying the perpetrator, which the therapist did when she repeated Child's claim that Father was the one who touched him, does not fall within the KRE 803(4) exception for permitting hearsay made for the purposes of medical treatment.

> [W]e reiterate what was made clear over a decade ago, that "we no longer recognize a special exception to the hearsay rule which allows medical providers to testify in court to the hearsay statements of a victim of sexual offenses which identify the alleged perpetrator because that identification is not pertinent to the medical treatment being provided."

*B.B. v. Commonwealth of Kentucky, Cabinet for Health & Family Servs.*, 635 S.W.3d 802, 809 (Ky. 2021) (quoting *Colvard v. Commonwealth*, 309 S.W.3d 239, 247 (Ky. 2010)).

For a hearsay identification to be admissible under KRE 803(4) the statement must pass a two-prong test: "(1) the declarant's motive in making the statement must be consistent with the purpose of promoting treatment; and, (2) the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." *Id.* (quoting *Colvard*, 309 S.W.3d at 245) (internal quotation marks omitted). The *B.B.* Court concluded that the first prong was not met in the analogous situation of a four-year-old taken to treatment by a parent after sexual abuse allegations because, without the child's testimony, it was not established that the child had the requisite selfish motive to give a truthful account for the purposes of treatment. *Id.*

635 S.W.3d at 810, (quoting *Hoff v. Commonwealth*, 394 S.W.3d 368, 376 (Ky. 2011)).

In the case *sub judice*, the therapist's opinions contravene both of these prohibitions, first by vouching for Child and stating that he was not coached; they likewise constitute improper bolstering. Second, the therapist improperly opined that Father abused Child based upon Child's behaving like someone who had been abused. Mother's first-hand, factual observations of Child's actual behavior and actions, of course, were admissible evidence by lay testimony. We are aware that the Family Court only cited Child's demeanor in its finding and not the therapist's opinions, but we cannot ignore that the two were inextricably linked. As the fact-finder sitting without a jury, the Family Court should not have received this type of testimony in the first place.

As acknowledged by the Commonwealth and the guardian *ad litem*, this is a difficult case because there is no medical or physical evidence, and Child did not testify. The case hinged on credibility assessments and reasonable inferences drawn from the evidence. In such cases, Courts must be vigilant against the long-recognized prejudicial impact of a respected professional's vouching for the truth of a child's out-of-court statement. *See Hoff*, 394 S.W.3d at 378-79; *King v. Commonwealth*, 472 S.W.3d 523, 532 (Ky. 2015); and *Stephens*, 680 S.W.3d at 906-07. Although we presume that when a Court acts as the trier of fact that it will

-13-

be able to disregard incompetent evidence, when it is apparent this did not occur, "the error in the admission of the unreliable evidence cannot be deemed harmless or nonprejudicial." *G.E.Y. v. Cabinet for Human Res.*, 701 S.W.2d 713, 715 (Ky. App. 1985). Here, the repeated admission of incompetent proof in this matter and the Family Court's clear reliance thereon in making its written finding that sexual abuse occurred renders the judgment manifestly erroneous, prejudicial, and thus unjust. Accordingly, we must vacate the adjudication order.

We will now address Father's claims that the Family Court wrongfully precluded him from introducing favorable evidence. A ruling excluding evidence results in error only: (a) if it affects Father's substantial rights; and (b) he made the substance of the evidence known to the Family Court by offer or context. KRE 103(a)(2). Father asserts that the Family Court erroneously prevented him from introducing: (1) Child's allegations against him made during the CACK; (2) a DVD of Father's interview with the police detective; (3) testimony regarding Child's demeanor during the forensic interview; and (4) conclusions and opinions regarding whether the alleged abuse occurred. We address each in turn to the extent that we are able to discern Father's argument and only for manifest injustice. "It is not our function as an appellate court to research and construct a party's legal arguments." *Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005).

Regarding the CACK allegations, the Family Court excluded them as hearsay. Presumably, Father does not seek to introduce the allegations against himself to prove the truth of the matter asserted, excluding the statements from being hearsay per KRE 801. However, Father never articulated any basis for the admission of these statements in the proceedings below.

On appeal, Father maintains that this evidence was necessary to refute the treating therapist's improper hearsay testimony that Child had alleged in his forensic interview that Father had asked him to touch his penis. The claim is unpersuasive given that Father does not specifically assert that Child made no such allegation. Moreover, beyond moving to strike the testimony as hearsay, Father's recourse would have been to impeach the therapist rather than to introduce additional hearsay statements. *See Jordan v. Commonwealth*, 74 S.W.3d 263, 269 (Ky. 2002) (the Kentucky Supreme Court noting that there is no legal basis for "curative" hearsay). Likewise, we are unpersuaded by Father's implied significance to the fact that Child made two additional allegations in the CACK interview to which he did not refer or repeat in therapy. Accordingly, we are unpersuaded that Father's substantial rights were affected.

As for the DVD, Father has not cited to the record where he attempted to introduce this evidence, and our review of the record does not demonstrate that

an offer of proof was ever made.[8]  Accordingly, there can be no error.  *See* KRE

103(a)(2) (requiring an offer of proof).

Regarding Child's demeanor during the CACK interview, as

acknowledged above, demeanor evidence can be admissible.  However, Father was

able to introduce this evidence from the police detective, a neutral witness with

training.  Father has not argued, and we fail to appreciate, how the exclusion of this

presumably redundant testimony from two additional witnesses, the forensic

interviewer and the child advocate, resulted in a manifest injustice.

Finally, as for the exclusion of opinion evidence from the police

detective, the forensic interviewer, and the child advocate regarding whether

Child's demeanor indicated that he was being truthful, as discussed in detail above,

such evidence is improper, and the Family Court did not err in this regard.

Therefore, Father's claims are without merit, and on remand there is no need for

the introduction of additional evidence.

### III.    Conclusion

For the foregoing reasons, the judgment of the Simpson County

Family Court is VACATED, and this matter is REMANDED for the Family Court

---

[8]  On the first day of the adjudication hearing, Father did ask for a continuance to secure the police detective's testimony and referenced the interview as a basis for the request.  The Family Court denied the motion for a continuance without an express ruling as to the admissibility of the DVD.  Further, the police detective ultimately did testify when the adjudication hearing was resumed months later, and Father made no attempt at that time to introduce the interview.

-16-

to reconsider and determine anew whether Child is abused or neglected based only upon evidence that was properly admitted during the formerly conducted adjudication hearing.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jonathan Sacks
Bowling Green, Kentucky

BRIEF FOR APPELLEE
COMMONWEALTH OF
KENTUCKY:

Timothy D. Mefford
Franklin, Kentucky

BRIEF FOR APPELLEE S.R.:

Amanda L. East
Franklin, Kentucky