Robert Joseph SAMSON, III, Appellant

v.

Heidi Marie SAMSON, Appellee.

No. 2011–CA–002181–ME.

Court of Appeals of Kentucky.

Aug. 17, 2012.

Joseph D. Buckles, Lexington, KY, for appellant.

Adele Burt Brown, Lexington, KY, for appellee.

Before CLAYTON, LAMBERT, and STUMBO, Judges.

## OPINION

CLAYTON, Judge:

This is an appeal from the Fayette Circuit Court, Family Branch's (Family Court) granting of a leave to relocate brought by the Appellee, Heidi Marie Samson. The Appellant, Robert Joseph Samson, III, contends that it is not in the best interest of their child to relocate to Washington State and that the Family Court erred in granting Heidi's request. For the foregoing reasons, we affirm the decision of the Family Court.

## BACKGROUND INFORMATION

Heidi and Robert were married in May of 2009 in Texas. Soon after they were married, the couple moved to Kentucky. They have one child together. In November of 2011, the couple was divorced and Heidi was granted sole custody of the child. Robert was granted visitation. Both parties have substance abuse issues and bipolar disorder. Multiple emergency protective orders (EPO) were taken out, two with Robert as the petitioner and one with Heidi.

In May of 2011, Robert's time-sharing with their child was terminated due to a positive drug test. It was reestablished in September of 2011 with visitation coordinated through an agency called Sunflower Kids. The Family Court referred the case to the Friend of the Court's office for a time-sharing evaluation and Barbara Nor-

ris was assigned to investigate the case. Ms. Norris's report was incorporated with the Family Court's order allowing relocation.

After hearing proof, the Family Court determined that it was in the child's best interest to relocate with Heidi to Washington. Robert appeals the Family Court's decision.

## STANDARD OF REVIEW

In determining whether the court erred in granting or denying custody, the appellate court must determine whether the findings of the court were clearly erroneous or whether there was an abuse of discretion. *Eviston v. Eviston*, 507 S.W.2d 153 (Ky.1974). Kentucky Rules of Civil Procedure (CR) 52.01 provides that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." A judgment is not "clearly erroneous" if it is "supported by substantial evidence[.]" *Owens–Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky.1998). "Substantial evidence' [is] evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Id. Kentucky State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 308 (Ky.1972).

With these standards in mind, we review the Family Court's decision.

## DISCUSSION

Robert first contends that the Family Court relied upon inadmissible and unreliable expert testimony in making its decision to allow Heidi to relocate with the child. Specifically, he contends that Ms. Norris is a qualified social worker and her opinions should be limited pursuant to Kentucky Rules of Evidence (KRE) 702. He argues that as a qualified social work-

er, Ms. Norris's opinions cannot relate to psychological analysis or the credibility of the witnesses. He relies on the case of *Hellstrom v. Commonwealth*, 825 S.W.2d 612 (Ky.1992), to support his argument. In that case, the Kentucky Supreme Court held that:

> Psychologists and psychiatrists are not . . . experts at discerning the truth. Psychiatrists are trained to accept facts provided by their patients, not to act as judges of patients' credibility.
>
> This same legal reasoning applies with much greater force to the testimony of a social worker, however well qualified.

*Id.* at 614 (internal quotation omitted).

Robert asserts that Ms. Norris only served as a conduit for the introduction of hearsay testimony. We disagree. Ms. Norris's credentials were set forth by the trial court and she was appointed to perform an evaluation. There is no indication, however, that her report was the sole reason the Family Court chose to grant the relocation request. The court heard from family and friends regarding the ties to the community the child and the parties had. Based upon this, the court found as follows:

5. The Court finds that the Mother's current situation in Lexington, Kentucky, is not in the best interest of this child, despite the fact that she does have a certain level of support here. She has benefited from the HANDS program. She has benefitted from support from the local Mormon Church where she participates. She has benefitted from the charity of Diana Dean where she lives. However, other than moving here with her husband in February 2010, she has no real connection with Lexington or Fayette County, Kentucky.

6. In fact, neither does the Father. These parties met in April 2009 in Tex-

as. Admittedly, both were living a transient and substance abusing lifestyle at that time. They married on May 10, 2009, after knowing each other less than 60 days. In August 2009, the parties moved to Fleming County, Kentucky, where the Father's mother lives. This was an odd move since the Father had traditionally lived in Michigan his whole life, but nevertheless, he moved there allegedly to have some support system from his family. The Mother followed. Within a short time, the Father had taken a job with the Yellow Cab and in February 2010 moved to Lexington, KY. The parties lived in four different places in Fayette County. On October 23, 2010, this baby was born. The parties continued their basic lifestyle of drinking for the Mother and drugs for the Father. Both parties have been diagnosed as Bipolar. Both parties, even today, are heavily medicated for their psychiatric conditions.

. . . .

14. In short, there continues to be great concern by the Court for the continued mental and emotional health of both these parties. Even now, neither party has any income. Even now, both parties rely on the charity and good will of other people to survive.

. . . .

17. The Father expresses concerns about the move to Washington State primarily based upon the finances, believing that it will cost him $2,000 per trip to see his daughter. He also expresses concerns about the Mormon Church, stating that "from what I know about LDS, they are controlling and have multiple wives . . . and I don't want to see my child raised by someone else." The Father claims that from May to September 2011, when he did not see his daughter, he "cried himself to sleep every night."

18. The Court has to find the Father's testimony slightly disingenuous based upon the facts. He has a son in Mexico that he virtually never sees. In fact, the Court has received no competent proof that he even has a son, and if he does, why is he not seeing that child on a regular basis. [sic] The Court also notes that any lack of contact between the Father and his daughter has been caused by his drug use and his bizarre behavior both in and out of court.

19. In summary, the Court has concluded that the questions in this case have no immediate answers. It is well noted however that in fact neither party has permanent contacts in Fayette County. The Father moved voluntarily to Fleming County many months ago, and the Mother now seeks to return to her home as well. Both of these parents are returning home, and the Court sees no reason to deny same.

Based upon these findings, the court granted Heidi's request to relocate. We find no error with these findings which are based on substantial evidence. While Robert contends Ms. Norris's expert testimony should not have been used by the court, we find no reason why it should not and, in fact, the record reflects that it was only a small part of the decision to grant the request.

In *Frances v. Frances*, 266 S.W.3d 754 (Ky.2008), the Kentucky Supreme Court held in a relocation situation where the relocating parent is the primary custodian, Kentucky Revised Statutes (KRS) 403.270 controls. As such, the court reviewing the relocation on request must determine what is in the best interest of the child. In this case, the Family Court held that the child's best interest would be served by allowing her to be relocated to Washing-

ton. This was based on the history of the relationship of the parties, their current situations, their support systems and their ties to Fayette County. The Family Court did not err in determining that the child's best interests would be served by relocation to Washington.

Thus, we affirm the decision of the Fayette Family Court.

ALL CONCUR.