**John HUNTER and Henry Adams,
Appellants,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 17, 1972.

Rehearing Denied May 12, 1972.

E. R. Gregory, Bowling Green, for appellants.

John B. Breckinridge, Atty. Gen., Douglas E. Johnson, Sp. Asst. Atty. Gen., Frankfort, for appellee.

GARDNER, Commissioner.

Appellants John Hunter and Henry Adams were adjudged to be guilty of petit larceny and each was fined $500. They have moved for an appeal.

The object of the larceny was a bird dog owned by Harold Mitchell. According to Tommy Shores, a neighbor of Mitchell, Tommy saw Hunter and Adams riding back and forth in front of his house in a green Cadillac on State Highway 31–W near the Kentucky-Tennessee line. Tommy saw the car stop and heard a door slam. In about five minutes he saw Adams leading a bird dog in front of his house. Tommy knew that Mitchell owned some dogs and went to Mitchell's house and informed him of the recent occurrences. Mitchell went to his dog pen, found the gate open and the bird dog gone. Mitchell and Tommy went in search of Hunter and Adams and found them in the green Cadillac parked beside the road. Mitchell drove about 50 yards beyond the Cadillac and turned. At the same time Hunter and Adams turned the Cadillac and in great haste went in the opposite direction. Mitchell went to his grocery store and called the state police. Shortly thereafter he looked down the road and saw the

dog, but was unable to catch it until the next morning.

Hunter's and Adams' version was that they picked up what they thought was a lost dog beside the road, intending to return it to the owner. They had driven a short distance when they discovered a tag on the collar but could not make out the owner's name. Not finding anyone who appeared to be looking for a dog, they drove back to where they had found the dog and let her out. They insisted there was no intent on their part to keep the dog.

One ground for reversal is that the instructions were erroneous. Appellants point out that the instructions did not provide that in order to find the defendants guilty the jury must believe they took the dog with *intent to permanently deprive* the owner of his dog and with the *intent to convert the same to their own use*. The record discloses that appellants did not properly preserve the error for appellate review. They made no objection to the instruction when it was given or assign it as error in their motion for a new trial. RCr 9.54(2) provides: "It shall not be necessary in order to preserve error that objections to instructions be made during the trial, but unless so made they must be presented in a motion for new trial." Appellants insist the error was properly preserved when they asserted it in their amended motion for a new trial. While the motion for a new trial was served in time (four days after the verdict), the amended motion for a new trial was not served until 35 days after the verdict. It is provided in RCr 10.06: "The motion for a new trial shall be served not later than five days after return of the verdict." RCr 1.10 provides: "* * * The time shall not be extended for a motion for a new trial, a motion in arrest of judgment, the period for filing the record on appeal (except as provided in Rule 12.58), or the period for taking an appeal." To permit the setting up of a new ground by an amended motion after the time for filing a

motion for a new trial has expired would do violence to the criminal rules referred to. A federal court has strictly construed a similar federal rule. See Francis v. Southern Pac. Co., C.C.A. 10, 162 F.2d 813 (1947), where it was held that an amended motion for a new trial filed more than 40 days after entry of judgment, insofar as it sought to raise for the first time the question whether a jury panel had been properly selected, was not timely. We believe the federal court holding is sound and properly emphasizes the necessity of mandatorily drawing the curtain on the time for asking for a new trial.

Appellants offer two other reasons for reversal, both of which are concerned with interrogation of appellants by police officers. The testimony of Trooper Albert Bridges was in part as follows:

"14. Did either of the defendants make any statement to you with reference to the reason for which you had picked them up?

A. At the time I picked them up, they said they didn't know anything about any dog, and later on at the police station Mr. Adams, I believe—the colored man . . .

15. Are you pointing to the colored man?

A. Yes. He made the statement later on at the police station that they did pick the dog up, but that they put it back out on the highway.

16. Did the other defendant, Mr. Hunter, make any statement to you with regard to the dog, other than the first statement which you have already testified about?

MR. GREGORY: Judge, may we approach the Bench?

THE COURT: Yes sir."

The record is quiet on what transpired during the bench conference. The court then instructed the jury not to consider the

testimony of the officer because the defendants had not been warned of their right to remain silent. Counsel for appellants pursued the objection no further. He did not move for a mistrial. It is well within the realm of valid assumption that counsel was satisfied with the court's admonition to the jury. At any rate the error, if any, was not preserved for review by this court. RCr 9.22.

 Trooper William R. Dodson testified that he advised appellants of their constitutional rights and then the officer was asked:

"8. After you gave them this advice, did they give any statement? Did either one of them give any statement at all?

MR. GREGORY: Objection and move to discharge the jury.

THE COURT: Overruled."

Before Trooper Dodson answered the question there was an in-chambers hearing in which appellants' counsel insisted, as he does now, that the question itself violated the rights of appellants under the Fifth Amendment of the United States Constitution as interpreted by Miranda v. Arizona, 384 U.S. 436, at 468, footnote 37, 86 S.Ct. 1602, at 1625, 16 L.Ed.2d 694 (1966), where the court said:

"In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation."

The argument is without merit. When objection was raised the question was never answered nor was there any further reference to the police interrogation. The question was left dangling. It can not be assumed that appellants refused to answer the question, or that they did answer it. Evidence was not presented to the jury, therefore, that appellants "stood mute or claimed their privilege in the face of accusation" as condemned by Miranda v. Arizona, supra.

The judgment is affirmed.

All concur.