Malcolm BLOUNT, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2012–SC–000002–MR.

Supreme Court of Kentucky.

Feb. 21, 2013.

Dennis Lee Null, Jr., Null, Samson & Paitsel, Mayfield, KY, Counsel for Appellant.

Jack Conway, Attorney General, Micah Brandon Roberts, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, David Lee Hargrove, Weisenberger, Hargrove & Foster, Mayfield, KY, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Malcolm Blount, appeals as a matter of right, Ky. Const. § 110, from a judgment of the Graves Circuit Court convicting him of two counts of first-degree sodomy and two counts of first-degree sexual abuse and sentencing him to twenty years' imprisonment. The victim of Appellant's alleged crimes is his step-granddaughter, "Sally,"[1] who was under 12 years of age when the abuse allegedly occurred.

The sole issue Appellant raises on appeal is that the trial court erred by allowing testimony from Sally's mother, and to a lesser extent her father, regarding changes in Sally's behavior, which the mother implied were symptomatic of child sexual abuse based upon discussions she had with Lori Brown, a clinical psychologist who counseled Sally and her family. Appellant alleges that this testimony amounted to inadmissible evidence of "child sexual abuse accommodation syndrome" (CSAAS).

---

1. "Sally" is a pseudonym employed in this opinion to protect the child's true identity.

While we conclude that the evidence was improper, we further conclude that the trial court sustained Appellant's objection to the specific testimony at issue, and granted all of the relief he requested concerning that evidence. We accordingly affirm. We discuss the issue to dispel an apparent belief that, despite our well-established line of cases prohibiting expert opinion on CSAAS, lay witnesses may testify about a putative victim's behavioral changes to imply what the expert is forbidden from saying directly—that behavioral changes signify sexual abuse.

Appellant was indicted and charged with two counts of first-degree sodomy and five counts of first-degree sexual abuse committed against Sally. The same indictment also charged Appellant with several similar crimes allegedly committed against two other young girls. Because Appellant was acquitted at trial on those charges, no issues relating to them are now before this Court.

At Appellant's trial, Sally's mother, Brandi, testified that she was surprised when she first learned that her daughter may have been a victim of sexual abuse. Brandi testified that she had not recognized the significance of her daughter's behavioral changes around the time of the alleged abuse until going through counseling with Lori Brown for families of sex abuse victims, and that "surely [Sally] would have told us something ... anything. We would have seen the signs." The prosecutor then asked Brandi, "Did you even know the signs [of sexual abuse] to look for?" Brandi responded, "No, sir, *not until after we've been to counseling and we, you know, we look back to after, about [Sally] was six and her attitude started changing.* You know, she started not letting me fix her hair." Appellant objected and the trial court sustained the objection, allowing Brandi to testify to

what she personally observed, but not to the "signs" that the counselors told her to look for.

As the testimony continued, Brandi said, "People's [sic] always saying there's signs [of sexual abuse], well then, looking back, until she was 5 or 6, [Sally] was the happiest kid. Then around first grade, six-years old, she started ... she didn't really care about herself ... she went from being the best dressed in school to wearing basketball shorts, t-shirts[.]" Brandi continued "[Sally's hair] was always really cute, and then she was like, 'don't touch my hair ... I don't want you touching me, don't look at me.' I didn't know that was a sympt ... sign." Appellant again objected, and asked for a mistrial.

Sally's father, Kevin, also testified. The prosecutor asked him whether he had noticed any changes in Sally when she was around six or seven years old, the time of the alleged abuse. He responded that Sally had always been small for her age but she began gaining weight around that time. Kevin added that he did not know if this was abnormal, that he did not know "what to look for" at the time, implying that later, through counseling, he learned that Sally had exhibited the "signs" of sexual abuse.

The clear import of this testimony was to imply that Sally had displayed the signs of CSAAS that Sally's parents had learned about through counseling with Brown. Since *Bussey v. Commonwealth*, 697 S.W.2d 139 (Ky.1985) and *Lantrip v. Commonwealth*, 713 S.W.2d 816, 817 (Ky.1986) this Court has consistently held that the symptoms, or signs, of the "so-called" child sexual abuse accommodation syndrome are not admissible. Appellant objected appropriately throughout Brandi's testimony. The trial court recognized the validity of Appellant's concern, and ruled that Brandi could testify to what she observed concern-

ing the child's changed behavior, as long as she did not testify that they were "signs" of CSAAS as it had been explained to her by Brown. Thus, it is apparent from the discussions at the bench that the trial court and the prosecutor believed a witness may testify regarding behavioral changes by an alleged victim, and implicit in that belief is that the jury may infer from these behavioral changes that the abuse actually occurred.

After further discussions about the propriety of Brandi's testimony, the trial court admonished the jury to disregard Brandi's testimony insofar as it referred to the symptoms or signs of sexual abuse that Brown had told her to look for. The judge instructed the jury not to give that testimony "any evidentiary value."

 Appellant denied committing the crimes and presented his defense that the charges were a total fabrication. He argues that the prosecution was clearly trying to evade the prohibition against CSAAS evidence by insinuating that Sally's behavioral changes were recognized as symptoms of sexual abuse. In *Bussey, Lantrip* and several subsequent cases [2] we have consistently held that evidence of CSAAS was not admissible because it lacked scientific acceptance. In *Newkirk v. Commonwealth*, 937 S.W.2d 690 (Ky. 1996), we noted that "[i]n an unbroken line of decisions ... this Court has repeatedly expressed its distrust of expert testimony which purported to determine criminal conduct based on a perceived psychological syndrome." *Id.* at 690–91. The multiple rationales for the specific rule against CSAAS testimony include "the lack of diagnostic reliability, the lack of general acceptance within the discipline from which

such testimony emanates, and the overwhelmingly persuasive nature of such testimony effectively dominating the decision-making process, uniquely the function of the jury." *Id.* at 691.

In *Hellstrom v. Commonwealth*, 825 S.W.2d 612 (Ky.1992), we reversed a conviction based upon testimony that "'delayed disclosure' is common in these types of cases." *Id.* at 613. We noted that "[b]oth sides recognize that we have reversed a number of cases because of trial error in permitting the use of testimony regarding the so-called 'child abuse accommodation syndrome' to bolster the prosecution's case." *Id.* (citations omitted). Further, it does not matter that the witness "listed the symptoms but refrained from classifying them directly as the 'child sexual abuse syndrome.' Avoiding the term 'syndrome' does not transform inadmissible hearsay into reliable scientific evidence." *Id.* at 614.

Most recently, in *Sanderson v. Commonwealth*, 291 S.W.3d 610 (Ky.2009), we held that it was improper for child sexual abuse witness Lori Brown, the same clinical psychology expert involved in this case, to testify that it is normal for child victims of sexual abuse to add details about their abuse and, under certain circumstances, to appear happy in their outward life and be able to excel in their extracurricular activities and make good grades. The Commonwealth further asked whether what Brown described as a child's attempt to disconnect from such abuse is the reason sexually-abused girls become prostitutes. In reversing the sexual offense conviction in *Sanderson* we concluded, "Brown's 'expert' testimony in this case, coupled with the Commonwealth's speculation about the

**2.** These cases include *Hellstrom v. Commonwealth*, 825 S.W.2d 612 (Ky.1992); *Newkirk v. Commonwealth*, 937 S.W.2d 690 (Ky.1996); *Miller v. Commonwealth*, 77 S.W.3d 566 (Ky. 2002); *Kurtz v. Commonwealth*, 172 S.W.3d 409 (Ky.2005); and *Sanderson v. Commonwealth*, 291 S.W.3d 610 (Ky.2009).

creation of prostitutes, are the exact type of generic and unreliable evidence this Court has repeatedly held to be reversible error." *Id.* at 614.

■ The trial court incorrectly assumed that testimony regarding the child's changed demeanor was permissible so long as it is not presented as expert testimony linking it to the sexual abuse alleged in the indictment.[3] We note with curiosity that these "symptoms" of sexual abuse (i.e., being an apparently happy, well-adjusted child) which were evident in *Sanderson*, are remarkably different from the "signs" exhibited by Sally. Nevertheless, to suggest that Sally's behavior was indicative of abuse is just as misleading and prejudicial. More importantly, like the symptoms recited in other cases, the symptoms that Brandi described come with no pedigree of scientific acceptance.

■ We see no sound reason, nor has one been presented to us in this case, to deviate from the well-settled precedent reflected in the foregoing case law. We have been shown no academic or scientific studies, or any other evidence, to indicate that the concept of CSAAS has attained the kind of validity that would enable one to accurately identify victims of sexual abuse from the behaviors depicted here. An examination of the authorities cited above discloses that an expert would not have, in this case, been permitted to take the stand and testify that Sally's changes of behavior near the time of the alleged abuse (changes in "attitude," her hairstyle, clothing preferences, and weight) were singly or cumulatively indicative of sexual abuse. It follows that a lay witness may not testify about these same behaviors by implying that an expert had told her that these changes were indicators of sexual abuse. Brandi's lay testimony listing Sally's behavioral signs, or symptoms, with unexplained significance is essentially what we condemned in *Hellstrom*. Avoiding a term such as "child abuse accommodation syndrome" does not cure the evidentiary defect; it does not cloak the "signs" with the scientific validity needed to make them meaningful and relevant. Thus, the evidence was not admissible under our CSAAS line of cases for the purpose of proving that the victim was sexually abused.

■ To the extent the evidence was introduced for some other, unspecified, pur-

---

3. By way of clarification, we emphasize that behavior or conduct that is within the understanding of ordinary personal experience remains admissible when it is probative of a fact in issue. For example, in *Dickerson v. Commonwealth*, 174 S.W.3d 451, 471–72 (Ky.2005), we recognized that evidence of a child's emotional distress following an alleged sexual assault was admissible to prove that a traumatic event (such as the alleged assault) had in fact occurred. We rejected the defendant's argument that testimony about the young victim's emotional state was "indirect evidence" of sexual abuse accommodation syndrome. We distinguish such evidence from the instant case in which the significance of Sally's particular behavioral changes as an indicator of sexual abuse is far from the realm of ordinary personal experience. Similarly, in *McKinney v. Commonwealth*, 60 S.W.3d 499, 504 (Ky.2001), we held that "observations that Appellant appeared "calm", "normal," and lacking any emotional response [upon learning that his wife and stepchildren had been killed] certainly lend themselves to an inference that Appellant was guilty." And, of course, a suspect's flight to elude capture or prevent discovery is admissible because "flight is always some evidence of a sense of guilt." *Day v. Commonwealth*, 361 S.W.3d 299, 303 (Ky.2012), and *Rodriguez v. Commonwealth*, 107 S.W.3d 215 (Ky.2003)(*quoting Hord v. Commonwealth*, 227 Ky. 439, 13 S.W.2d 244, 246 (1928)).

Our holding in this case in no way effects admissibility of behaviors, such as those exemplified above, that are within the common experience of ordinary people and have nearly-universally recognized significance.

pose, it would have been irrelevant to any of the issues being tried. Sally's hairstyle, dressing preferences, grooming habits, and weight gain near the time of the abuse were not germane to the determination of any fact of consequence to the case.

■ Nevertheless, though the evidence was improper, Appellant is not entitled to a reversal of his convictions. When Appellant first objected to Brandi's implication that Sally had "signs" of sexual abuse, the trial court at least partially addressed Appellant's concern by not permitting the witnesses, or the Commonwealth, to link the unusual (and as noted above, irrelevant) behaviors to advice given by counselor Brown. Then, Appellant moved for a mistrial. Before the trial court could rule upon that request, Appellant's counsel, after consulting with Appellant, withdrew the motion for a mistrial offering the reason that *"my client wants to get this over with."* Instead, Appellant requested an admonition, and the trial court admonished the jury to disregard the testimony altogether. Appellant requested no other relief. As it appears that he "agreed with the trial court's approach and did not request any further curative measures, he received all the relief that he requested; thus there is no error to review." *Rankin v. Commonwealth*, 265 S.W.3d 227, 235 (Ky.App.2007).

■ With regard to Kevin's testimony concerning Sally's behavioral changes, we note that while Appellant made a continuing objection, he did not move for a mistrial as a result of Kevin's testimony, and he did not request any other relief, such as an admonition. RCr 9.22 imposes upon a party the duty to make "known to the court the action which that party desires the court to take or any objection to the action of the court...." Failure to comply with this rule renders an error unpreserved. *Bowers v. Commonwealth*, 555 S.W.2d 241,

243 (Ky.1977). If a party claims entitlement to a mistrial, he must timely ask the court to grant him such relief. *Jenkins v. Commonwealth*, 477 S.W.2d 795, 797–98 (Ky.1972). "Further, we have held that failure to move for a mistrial following an objection and an admonition from the court indicates that satisfactory relief was granted." *West v. Commonwealth*, 780 S.W.2d 600, 602 (Ky.1989). "It is well within the realm of valid assumption that counsel was satisfied with the court's admonition to the jury." *Id.* (quoting *Hunter v. Commonwealth*, 479 S.W.2d 4, 6 (1972)).

■ From the foregoing it is clear that a party must timely inform the court of the error and request the relief to which he considers himself entitled. Otherwise, the issue may not be raised on appeal. *Id.* Because Appellant withdrew his motion for a mistrial with regard to Brandi's testimony and failed to move for a mistrial as a result of Kevin's testimony, his present argument to the effect that he should have received a mistrial as a consequence of the evidence is not properly preserved. Accordingly, we do not reverse his convictions.

For the foregoing reasons, the judgment of the Graves Circuit Court is affirmed.

MINTON, C.J., ABRAMSON, CUNNINGHAM, NOBLE, SCOTT, JJ., sitting. All concur.