# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: JUNE 17, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0097-MR

DAVID ANDREW SIMS, III                                    APPELLANT


                    ON APPEAL FROM GRAVES CIRCUIT COURT
V.                  HONORABLE TIMOTHY C. STARK, JUDGE
                              NO. 19-CR-00057


COMMONWEALTH OF KENTUCKY                                    APPELLEE


### MEMORANDUM OPINION OF THE COURT

### <u>AFFIRMING</u>

David Andrew Sims, III appeals as a matter of right[1] from the Graves Circuit Court judgment sentencing him to forty-years' imprisonment for his convictions of first-degree rape, victim under 12 years of age (two counts); incest, victim under 12 years of age (three counts); first-degree sodomy, victim under 12 years of age; second-degree rape, victim under 14 years of age (three counts); incest, victim under 18 years of age (five counts); second-degree sodomy; and third-degree rape, minor victim. On appeal, Sims raises eight claims of error, none of which merit reversal. Accordingly, we affirm his judgment of conviction and sentence.

---

[1] Ky. Const. § 110(2)(b).

## I. Facts and Procedural Background

Sims gained custody of the victim in this case - his biological daughter, A.S. - in or around 2007 when A.S. was six-years-old. Prior to that, A.S. had been living with other family members in Georgia. Sims and A.S. lived with Sims's mother in Georgia for a short period of time before moving to Tennessee with Sims's wife, Shena, who had just given birth to Maley, Sims's other biological daughter. Shena's other two children, Kam and Lexi, also lived with them.

Those six (Sims, Shena, A.S., Kam, Lexi, and Maley)[2] lived in a myriad of places over the next ten years, but for purposes of this case, they resided in Dresden, Tennessee around 2013-14 before moving to Graves County, Kentucky. In January 2018, when A.S. was 17-years-old, she reported to her brother, Kam, that Sims had sexually assaulted her a few years before. Kam encouraged her to report the alleged abuse to Shena, which A.S. did. Shena immediately took A.S. to the police station, where she was interviewed by Detective Amberg, who arrested Sims later that day.

On November 12, 2018, a Graves County grand jury returned an indictment against Sims for the offenses of first-degree rape, victim under twelve years of age; incest, victim under twelve years of age; first-degree sodomy; first-degree sexual abuse; and distribution of obscene matter to a minor, for offenses occurring from 2012 through 2015, when A.S. was 11-

---

[2] Kam is approximately a year and a half younger than A.S.; Lexi is three to four years younger than A.S.; and Maley is around seven years younger than A.S.

years-old until she was almost 14-years-old. That case was later dismissed when a Graves County grand jury issued a superseding indictment on February 8, 2019, charging Sims with six additional counts, for a total of eleven counts. The superseding indictment included first-degree rape and incest (four counts), but none of those counts alleged the victim was under 12 years of age. The superseding indictment also included second-degree sodomy, second-degree rape (victim under 14-years-old), third-degree rape, distribution of obscene matter to a minor, and first-degree sexual abuse, victim under 12 (two counts).

On October 18, 2019, a little over a month before trial, a Graves County grand jury returned another superseding indictment with additional charges. That indictment contained seventeen counts total, including first-degree rape, forcible compulsion (two counts); incest, victim under 18-years-old (eight counts); first-degree sodomy, forcible compulsion; second-degree rape, victim under 14-years-old (three counts); second-degree sodomy; third-degree rape, victim under 18-years-old; and distribution of obscene matter to a minor.

On the morning of the third day of trial, the Commonwealth moved to amend the first six counts of the indictment to reflect that A.S. was under twelve years of age at the time of the offense. Sims objected, arguing that he would be unfairly prejudiced – since he had not conducted voir dire on that subject, he claimed the amendments violated his due process rights and prevented him from adequately defending against the charges. The trial court

3

overruled his objection and allowed the amendments, which changed the charges from Class B felonies to Class A felonies.

Sims's trial lasted three days, during which the Commonwealth called eight witnesses and entered 10 exhibits. Sims presented no witnesses nor exhibits. He also declined to testify on his own behalf. Ultimately, the jury returned a verdict convicting him of sixteen counts, only acquitting him of the count of distribution of obscene matter to a minor. The jury recommended a sentence of forty-years' imprisonment, which the trial court imposed. This appeal followed.

## II. Analysis

Sims raises eight claims of error, which we will address in turn.

### A. Amendment of the indictment was proper.

Sims argues that the trial court abused its discretion by allowing the Commonwealth to amend six counts of the indictment on the morning of the third day of trial. The amendment made his alleged offenses Class A felonies by reducing the victim's age to under 12-years-old. It also removed the forcible compulsion element of first-degree rape. Sims asserts that the amendment deprived him of his right to answer the charges against him, in violation of his due process rights under the United States and Kentucky Constitutions.[3] Specifically, he maintains that the amendment prejudiced his ability to

---

[3] The Fifth Amendment requires that prosecution for felonies begin by indictment. *Stirone v. United States*, 361 U.S. 212, 215 (1960). Section 12 of Kentucky's Constitution provides similar protections. *Malone v. Commonwealth*, 30 S.W.3d 180, 182 (Ky. 2000).

4

properly voir dire the venire panel about the penalty ranges for these offenses, and hampered his ability to present a defense and effectively cross-examine the Commonwealth's witnesses. Finally, Sims claims the amendment of the first-degree rape, forcible compulsion count relieved the Commonwealth from the burden of proving forcible compulsion, which the grand jury charged and for which the defense had prepared in anticipation of trial.

Under Kentucky Rule of Criminal Procedure (RCr) 6.10(2), a criminal defendant is entitled to an indictment or information containing a "plain, concise and definite statement of the essential facts constituting the specific offense with which the defendant is charged." The rules further provide that the court may permit an indictment to be amended at any time before verdict if "no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced." RCr 6.16. In instances in which the trial court allows an amendment, the court shall grant a continuance "if justice requires." *Id.*

The rules expressly declare that the decision to allow the amendment of an indictment is within the sound discretion of the trial court, therefore, we will review Sims's claim of error under the abuse-of-discretion standard, which only permits disturbing the trial court's decision upon a showing that its ruling was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Herp v. Commonwealth*, 491 S.W.3d 507, 510 (Ky. 2016) (citation omitted).

An indictment serves to guard a defendant's constitutional due process rights: it protects the defendant's Sixth Amendment right to fair notice of the

5

criminal charges against which he will need to defend and his Fifth Amendment protections against double jeopardy and answering for crimes not presented to or indicted by a grand jury. *Kelly v. Commonwealth*, 554 S.W.3d 854, 862 (Ky. 2018) (citations omitted).

Here, the parties litigated for a year prior to trial. The element of A.S. being under 12 years of age had been included in previous indictments; thus, Sims not only had notice of the rape, incest, and sodomy charges, but was aware of the time span over which the charged offenses occurred (and A.S.'s age at the time). Accordingly, amending her age on the indictments should have not surprised, let alone, prejudiced him.

Furthermore, the amendment of the indictment was made before Sims's case-in-chief. Unlike cases in which the defendant presents an alibi defense, changing A.S.'s age on the indictment did not alter or affect Sims's defense since his defense was that the events never occurred. In *Anderson v. Commonwealth*, this Court held that the amendment to the indictment made at close of Commonwealth's case-in-chief, which changed the dates the alleged sexual abuse of the victim began and ended, did not prejudice the defendant, as the amendment did not charge the defendant with additional or different offenses, no alibi defense was prejudiced by the amendment, and if the amendment had left the defendant unprepared, he could have moved for a continuance to revamp his defense. 63 S.W.3d 135, 140–41 (Ky. 2001).

The appropriate relief for Sims in this instance was a continuance, which he did not request. *Owens v. Commonwealth*, 329 S.W.3d 307, 314 (Ky. 2011).

6

Considering the previously-issued indictments, Sims had fair notice of the charges and adequate sufficiency about the content of those charges to effectively defend against them. We discern no prejudice arising out of the amendment and are unable to conclude that the trial court abused its discretion.

## B. Evidence of uncharged conduct involving the same victim was admissible under KRE[4] 404(b).

Sims argues that the trial court abused its discretion by allowing the Commonwealth to introduce testimony from A.S. about prior sexual abuse committed by him against her when they lived in Tennessee. Sims avers that A.S.'s testimony was highly prejudicial and was offered only to show he was predisposed to commit these types of crimes. He preserved this issue by his motion in limine requesting exclusion of this evidence.

We review a trial court's evidentiary rulings for an abuse of discretion. *Brewer v. Commonwealth,* 206 S.W.3d 313, 320 (Ky. 2006) (citing *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999)). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.*

Generally, prior bad acts of a defendant are inadmissible. *See* KRE 404(b) ("[e]vidence of other crimes, wrongs, or acts is not admissible in order to prove the character of a person or in order to show action in conformity therewith[]"). KRE 404(b)(1) creates an exception and allows the introduction of

---

[4] Kentucky Rules of Evidence.

evidence of prior crimes or wrongs if they are offered for "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" If the acts are intertwined, they may also be introduced. *See* KRE 404(b)(2) (evidence admissible if "so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party[]"); *Pendleton v. Commonwealth*, 83 S.W.3d 522, 528 (Ky. 2002).

For evidence of other bad acts to be admissible under KRE 404(b)(1), it must satisfy the three-part balancing test set forth in *Bell v. Commonwealth*, 875 S.W.2d 882 (Ky. 1994). That test focuses on relevance, probativeness, and prejudice of the evidence:

> (1) Is the evidence relevant for some other purpose than to prove the criminal disposition of the accused? (2) Does it have probative value, *i.e.*, whether a jury could reasonably infer that the prior bad acts occurred and that the accused committed them? (3) Is its probative value substantially outweighed by its prejudicial effect?

*Id.* at 889–91.

This Court has held that "[e]vidence of similar acts perpetrated against the same victim . . . is 'almost always admissible,' under KRE 404(b), because it will almost always be significantly probative of a material issue aside from the defendant's character." *Jenkins v. Commonwealth*, 496 S.W.3d 435, 458 (Ky. 2016) (citations omitted). That said, evidence of prior acts against the same victim is not automatically admissible – "relevance to a material issue and probativeness must be shown, and the possibility of undue prejudice must

8

still be considered - but our experience with these cases has taught that in most of them the *Bell* inquiry leads to admission." *Id.*

A.S.'s testimony about Sims's prior sexual assaults against her was relevant to the material issues of motive, intent, opportunity, and common scheme. Those other sexual acts occurred when A.S. was about 9-years-old and usually during the night – details consistent with A.S.'s testimony about the current charges. The evidence was also probative as it permitted a reasonable juror to conclude that the prior acts occurred, and that Sims was the perpetrator. *See, e.g., Purcell v. Commonwealth*, 149 S.W.3d 382, 399–400 (Ky. 2004) (explaining testimony of alleged prior victims of sex offenses satisfies probative aspect of *Bell* test, that is "whether there is sufficient evidence that the 'other crime, wrong, or act" actually occurred[];'"), *overruled on other grounds by Commonwealth v. Prater*, 324 S.W.3d 393 (Ky. 2010).

However, "[e]ven if evidence is relevant and probative, it should be excluded if its probative value is substantially outweighed by the danger of undue prejudice and confusion of issues." *Purcell*, 149 S.W.3d at 400 (citing KRE 403). "[T]he trial court has a substantial amount of discretion in its performance of this KRE 403 balancing test." *Doneghy v. Commonwealth*, 410 S.W.3d 95, 109 (Ky. 2013). Here, the probative value of A.S.'s prior-act testimony outweighed any prejudicial effect and was relevant "for some other purpose" - that is, to prove motive, intent, opportunity, and common scheme. Accordingly, the trial court did not abuse its discretion by admitting it.

**C. Testimony about the victim's untruthfulness was properly excluded.**

Sims claims that the trial court abused its discretion by not allowing him to question A.S. about specific instances of her being untruthful. The court entered a pretrial order excluding any line of questioning into this subject matter on grounds that the victim's specific instances of untruthfulness were collateral and admitting them would violate KRE 608. We review a trial court's evidentiary rulings for an abuse of discretion. *Brewer*, 206 S.W.3d at 320.

Sims sought to impeach A.S. on cross-examination by asking her if she had ever gotten in trouble with her parents for lying. The Commonwealth objected, which the trial court sustained. Sims also asked A.S.'s stepmother, Shena, about whether A.S. often told the truth, to which Shena responded that a lot of times, A.S. did not tell the truth. The Commonwealth again objected, and the trial court sustained it. Defense counsel then followed up:

> Sims's counsel: Okay, so she, so that would be the opposite then?
> Shena: Yes.
> Sims's counsel: She didn't often tell the truth?
> Shena: Uh, a lot of times, no.
> Commonwealth: Objection.
> Trial court: Sustained, you can disregard that answer.

Sims maintains that KRE 608 permits the introduction of this type of collateral impeachment and that his constitutional right to confrontation was infringed upon by the trial court's refusal to allow it. KRE 608 governs evidence of character and conduct of witnesses and provides, in relevant part:

> (b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness

10

or untruthfulness, be inquired into on cross-examination of the witness: (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified. No specific instance of conduct of a witness may be the subject of inquiry under this provision unless the cross-examiner has a factual basis for the subject matter of his inquiry.

KRE 608(b).

Sims argues that he had a factual basis for inquiring into A.S.'s conduct probative of untruthfulness since this case rested on a credibility determination of whether A.S. was telling the truth. He points out that A.S.'s testimony was the only definitive evidence in this case, as no eyewitness or medical testimony was introduced to support her allegations.

Sims directs us to two cases which he claims support his assertion that the trial court should have allowed his inquiry, but both cases are factually distinguishable and therefore do not bear on our decision. In *Allen v. Commonwealth*, the specific instance of conduct that was excluded was that of the complaining witness, Weaver, against whom defendant Allen sought to introduce evidence that Weaver had previously pled guilty to two misdemeanor counts of giving a false name to a police officer. 395 S.W.3d 451, 461 (Ky. 2013). This Court held that under KRE 608(b), Allen should have been allowed to ask Weaver if he had ever lied to the police, since that specific act was a crime of dishonesty that reflected on Weaver's character for truthfulness. *Id.* Sims also cites *Montgomery v. Commonwealth* for the notion that he "has a right under the federal Constitution (and the Kentucky Constitution as well) to

11

'a meaningful opportunity to present a complete defense.'" 320 S.W.3d 28, 41 (Ky. 2010). However, *Montgomery* simply upheld the KRE 412 rape shield law's notice provision; that case did not implicate KRE 608. Neither *Montgomery* nor *Allen* provide us any guidance.

"Although . . . no provision in the Kentucky Rules of Evidence prohibit[s] impeachment on collateral facts, we have continued to recognize that prohibition as a valid principle of evidence." *Purcell*, 149 S.W.3d at 397–98. Here, Sims's line of questioning sought to paint A.S. as untruthful with respect to collateral situations, *i.e.*, previous instances of being untruthful not pertinent to the allegations at bar. The trial court prohibited this inquiry after conducting a balancing test per KRE 403. We will only disturb the trial court's evidentiary ruling if it was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Brewer*, 206 S.W.3d at 320. Given the absence of legal support for Sims's position and considering the well-recognized principle of evidence prohibiting impeachment on collateral facts, the trial court did not abuse its discretion in barring Sims's inquiries into A.S.'s tendency to be untruthful.

Lastly, regarding Sims's Confrontation Clause argument, an "accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). In other words, inadmissible evidence does not become admissible by virtue of the Confrontation Clause. We further point out that Sims was not denied the right to impeach A.S.'s credibility – he

12

was merely denied the ability to impeach her credibility by reference to purely collateral issues. Thus, we discern no reversible error.

### D. Sims was not deprived of his constitutional right to confront his accuser.

Sims alleges that the trial court abused its discretion by not allowing him to cross-examine A.S. about a nude photo of herself on her cellphone, other undefined pornography found on her cellphone, and about her being sexually abused by another perpetrator when she was five-years-old. Sims argues that the exclusion of this evidence violated his constitutional right to present a defense under the Due Process Clause of the Fourteenth Amendment and the Compulsory Process and Confrontation Clauses of the Sixth Amendment. *See Holmes v. South Carolina,* 547 U.S. 319, 324 (2006); *Crane v. Kentucky,* 476 U.S. 683 (1986).

In excluding this evidence, the trial court relied on KRE 412, also known as the "rape shield law." It states, in relevant part:

> (a) Evidence generally inadmissible. The following evidence is not admissible in any civil or criminal proceeding involving alleged sexual misconduct except as provided in subdivisions (b) and (c):
>
> (1) Evidence offered to prove that any alleged victim engaged in other sexual behavior.
>
> (2) Evidence offered to prove any alleged victim's sexual predisposition.

During the Commonwealth's direct examination, A.S. testified that she suffered from bulimia, self-cutting and anger in the months right before she disclosed her allegations. She said she suffered these conditions because of Sims's abuse and how he treated her. A.S. testified that she was not sure why

13

Sims did not want her to have a cellphone and that he took it away from her. She said that although Sims and Shena had "found stuff" on her phone, she did not think she had done anything wrong.

During cross-examination, Sims wanted to ask A.S. if her phone was taken away because she had taken a nude photo of herself. The Commonwealth objected on grounds that the rape shield law precluded such testimony. Sims responded that taking a nude picture was not sexual conduct and would be probative of A.S.'s motive for coming forward. The trial court allowed Sims to ask A.S. if she had inappropriate content on her cellphone but not whether the inappropriate material was a nude photo.

A.S. denied having objectionable content on her phone. Defense counsel asked to approach the bench and requested leave to ask about the specific photos so A.S. could later be impeached through Shena, and possibly Sims. The Commonwealth objected and again invoked the rape shield law. The trial court again ruled that Sims could not ask A.S. about the nude photo.

Sims then attempted to cross-examine A.S. about whether she had been removed from her biological mother's care because she was being sexually abused by her mother's boyfriend. The Commonwealth objected and the trial court ordered a recess. In chambers, the Commonwealth pointed to the court's pretrial order prohibiting Sims from questioning A.S. about "sexual experiences other than those concerning the Defendant" and asked that defense counsel be sanctioned. Defense counsel argued that A.S. opened the door to these topics because she mentioned that she had touched herself and was in counseling for

14

things that had happened in the past. The trial court decided to conclude for the day and revisit the issue the next morning.

During the in-chambers hearing the next morning, the Commonwealth argued that the questions were improper, and that Sims had failed to comply with KRE 412's notice requirement that a written motion be filed at least 14 days before trial. *See* KRE 412(c).[5] Defense counsel responded that she did not believe the evidence fell under KRE 412 and thus did not believe notice was required. The trial court engaged in a KRE 403 balancing analysis and ultimately ruled that evidence related to the nude photo of A.S., other pornography, and instances of prior sexual abuse was inadmissible. At the request of the Commonwealth, the court admonished the jury not to consider any reference to those topics. We review these evidentiary rulings of the trial court for an abuse of discretion. *Brewer*, 206 S.W.3d at 320.

Sims alleges that introduction of the nude photo and pornography on A.S.'s cellphone would have strengthened his defense that A.S. was motivated

---

[5] As summarized in *Basham v. Commonwealth*, 455 S.W.3d 415, 418 (Ky. 2014):

> KRE 412(c) provides the procedure for determining the admissibility of evidence proffered under an exception to the rape shield under subsection (b). It provides, in pertinent part, that a party intending to offer such evidence must 'file a written motion at least fourteen (14) days before trial specifically describing the evidence and stating the purpose for which it is offered unless the court, for good cause requires a different time for filing or permits filing during trial.' KRE 412(c)(2) further mandates that the trial court 'conduct a hearing in camera and afford the victim and the parties the right to attend and be heard" before evidence may be admitted under this rule.

to fabricate the allegations against him because he disciplined her by taking her phone away from her after discovering inappropriate content on it. Additionally, he claims that if the jury heard evidence of the prior sexual assault against A.S., it could have reasonably inferred that the medical issues (A.S.'s self-harm, tattoos, and bulimia) that A.S attributed to him were caused by the prior abuse.

Sims erroneously relies on *Basham v. Commonwealth*, 455 S.W.3d 415 (Ky. 2014). In *Basham*, this Court affirmed the trial court's exclusion of evidence of the victim visiting internet pornography sites, on the basis that the evidence was neither probative, relevant nor violative of the defendant's constitutional right to present a defense. *Id.* at 420 ("this constitutional guarantee does not give criminal defendants a right to present evidence that is not probative, nor does it authorize a fishing expedition at trial. If the offered evidence does not prove the point at issue, it cannot be a defense[]").

Indeed, KRE 412's balancing test contains "an obvious tilt toward exclusion over admission." *Commonwealth v. Dunn*, 899 S.W.2d 492, 494 (Ky. 1995) (internal citations omitted). The trial court, as gatekeeper, properly balanced Sims's right to present a defense against other legitimate interests. *See* KRE 403 ("[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence[]"). The court found that the restrictions of KRE 412(a)(1) and (2) applied to the evidence from the cell

16

phone, as it was sexual in nature and was offered to show A.S. engaged in "other sexual behavior" or her "sexual predisposition." Clearly, Sims did not have to introduce the content in A.S.'s cellphone to present his defense. Introduction of this evidence would have been substantially more prejudicial than probative under KRE 403; thus, the trial court did not abuse its discretion in excluding it.

The trial court also properly barred Sims's attempt to impeach A.S. regarding her being sexually abused by a third party when she was five-years-old. Sims offered this impeachment evidence to give an alternate source for A.S.'s injuries and explain why A.S. was familiar with sexual terms and acts. Sims asserts that the impeachment evidence fell under the exception in KRE 412(b)(1)(A) to show an alternate source for those injuries.

KRE 412(b)(1)(A) carves out exceptions, providing:

(b) Exceptions:
(1) In a criminal case, the following evidence is admissible, if otherwise admissible under these rules:
(A) evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen, injury, or other physical evidence;
(B) evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent or by the prosecution; and
(C) any other evidence directly pertaining to the offense charged.

As the Commonwealth notes, Sims's attempt to expand the exceptions contained in KRE 412(b)(1)(A) to injuries that were not directly caused by a sexual assault is not supported by the plain language of the rule. Regarding A.S.'s familiarity with sexual language and conduct, the trial court correctly

17

observed that given her age (17) when she came forward with these allegations, her familiarity need not be explained. After review, we conclude that the trial court correctly determined that this evidence was inadmissible.

**E. The victim's testimony was not improperly bolstered.**

Sims argues that the trial court erred by allowing the Commonwealth to improperly bolster A.S.'s testimony. This argument is partially preserved. Sims objected to the testimony of the forensic interviewer, Nicole Wadley, the admissibility of which we will review for an abuse of discretion. *Brewer*, 206 S.W.3d at 320. His claims attributable to the Commonwealth's closing argument statements allegedly vouching for A.S.'s truthfulness and the alleged improper bolstering testimony elicited from Shena, Kam and Det. Amberg were not preserved; thus, we will review those claims for palpable error per RCr 10.26, which provides:

> A palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

"Palpable error relief is available under RCr 10.26 only upon a determination that manifest injustice has resulted from the error. 'Manifest injustice' is 'error [that] so seriously affect[s] the fairness, integrity, or public reputation of the proceeding as to be 'shocking or jurisprudentially intolerable.'" *Davidson v. Commonwealth*, 548 S.W.3d 255, 261 (Ky. 2018) (quoting *Miller v. Commonwealth,* 283 S.W.3d 690, 695 (Ky. 2009)).

18

Wadley conducted a forensic interview of A.S. at the request of Det. Amberg, following A.S.'s disclosure of Sims's sexual abuse. Sims objected to Wadley testifying, but the trial court ruled that Wadley could testify to the steps she took in interviewing A.S., but not to any conclusions she formed, or about Child Sex Abuse Accommodation Syndrome ("CSAAS"). Wadley described her role as a forensic interviewer as follows:

> Wadley: A forensic interviewer is a mental health professional who is trained to provide fact-finding interviews with children during the course of an investigation. Information is collected using a research-based protocol that is designed to elicit accurate accounts of information. The goals of the interview are to collect information that will either corroborate or refute allegations of abuse.
>
> Commonwealth: How is that different from being a counselor?
>
> Wadley: Counselors or therapists seek to address concerns or distress with client, making changes in their client's life in order to decrease distress. As a forensic interviewer, we don't seek to make changes, just to collect information in a way that is legally defensible and is sensitive to a child or adolescent's development and age.

Wadley went on to describe her training, experience and qualifications to be a forensic interviewer. She testified that a child would come to her usually by referral from law enforcement or social services, and that she likely would know the identity of the reported offender and may request additional information about the investigation before interviewing the child. Wadley explained the procedure she utilizes when conducting a forensic interview, a protocol created by the National Children's Advocacy Center, which requires interviewing the child alone in a setting designed to put the child at ease, establishing rapport, and addressing the allegations by asking open-ended

19

questions. Wadley stated that one of the "rules" of the forensic interview is that the child must tell the truth. The interview is audio and video recorded and watched in real time by law enforcement and social services, who are in a separate room and whom Wadley periodically consults to determine if they need additional information. The child is made aware that the interview is being recorded.

Wadley testified that she knew Sims's identity and the nature of the abuse, including the allegations of sexual violence, before interviewing A.S. Wadley discussed the layout and design of the interview room and said that during the interview, A.S. used pen and paper to write things down, as is common practice. This was the extent of Wadley's testimony. Sims did not cross-examine her.

Sims argues that Wadley's testimony was "testimonial in nature" and therefore barred by the Confrontation Clause. The Confrontation Clause precludes admission of the statements of a witness unavailable to testify at trial if the witness' out-of-court statements were "testimonial," unless the accused had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). Sims cites *Hartsfield v. Commonwealth*, in which this Court held that the admission of statements made to an investigative nurse by a sexual assault victim, who died after the return of the indictment but before trial, were testimonial in nature and thus their introduction violated the Sixth Amendment's Confrontation Clause since the defendant did not have an opportunity to cross-examine the deceased

20

victim about the statements. 277 S.W.3d 239, 241 (Ky. 2009). However, unlike the victim in *Hartsfield*, A.S. was available as a witness and Sims had ample opportunity to cross-examine her, and Wadley, concerning statements A.S. gave during the forensic interview. Moreover, Wadley did not testify to any statements A.S. made to her. Thus, no Confrontation Clause issue was implicated, and the trial court properly declined to exclude Wadley's testimony on this basis.

Sims further contends that the testimony of Shena and Kam, which he alleges repeated A.S.'s disclosures, improperly bolstered A.S.'s testimony. Sims also challenges the admission of Det. Amberg's testimony that based on her interview of A.S., she set up a forensic interview and a medical evaluation for A.S., and immediately arrested Sims.

The Commonwealth recalled January 2018 to Kam - specifically told Kam he could not repeat what A.S. had said – but instead asked what he did. Kam testified that he told A.S., "let's go tell mom." Kam said that he, A.S., and Shena went to a gas station up the street and after that to the police station. During examination of Shena, the Commonwealth again clarified that she could not repeat what A.S. had said to her. The Commonwealth asked Shena what she did; Shena testified that Kam and A.S. asked her to take them to a gas station that day in January 2018 so A.S. could tell her something. The prosecutor asked Shena what she did next – Shena said she called the police, went to retrieve her other children from Sims, and took A.S. to the police station. Det. Amberg testified about A.S.'s disclosure, which led to her

21

scheduling a forensic interview and medical examination of A.S. The detective further said that after interviewing A.S. she believed she had probable cause to arrest Sims.

Kentucky law is clear that "a witness may not vouch for the truthfulness of another witness." *Chavies v. Commonwealth*, 374 S.W.3d 313, 322 (Ky. 2012) (citing *Stringer v. Commonwealth,* 956 S.W.2d 883, 888 (Ky. 1997)). Sims directs us to KRE 801A(a)(2), which provides that evidence of prior consistent statements is inadmissible unless "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive[.]" The Commonwealth argues that Shena's and Kam's testimony was admissible as rebuttal testimony - prior consistent statements under KRE 801A(a)(2) - after Sims attacked A.S.'s credibility on cross-examination.

Our review of the record discloses no hearsay testimony by any of these witnesses. To the contrary, the Commonwealth began its line of questioning of Shena and Kam by clarifying that they were not permitted to repeat what A.S. had said. And they did not. They simply relayed the actions they took afterwards. Thus, no error occurred.

Lastly, Sims claims that the Commonwealth's statement during its closing argument that A.S. had "told the truth" improperly vouched for A.S.'s testimony. As Sims did not object, we will review this claim for palpable error under RCr 10.26. In *Hall v. Commonwealth*, we outlined what constitutes improper vouching: "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility

22

thereby placing the prestige of the [prosecutor's office] behind that witness." 551 S.W.3d 7, 18 (Ky. 2018) (quoting *U.S. v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)). "Generally, improper vouching involves either blunt comments, such as, 'I think [the witness] was candid. I think he is honest,' or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." 551 S.W.3d at 18 (internal citations omitted).

In the context of closing arguments, this Court has long held that "all of the comments must be viewed through the lens of the wide latitude counsel is afforded in closing arguments. They are, after all, just that—*arguments.* 'A prosecutor may comment on tactics, may comment on evidence, and may comment as to the falsity of the defense position.'" *Dickerson v. Commonwealth*, 485 S.W.3d 310, 332 (Ky. 2016) (quoting *Slaughter v. Commonwealth,* 744 S.W.2d 407, 412 (Ky. 1987)). Sims claims that the Commonwealth improperly stated during closing argument that A.S. was telling the truth. However, our review of the record discloses that the Commonwealth did not expressly say that – instead, it recalled some of A.S.'s testimony and generally implied A.S. was not lying. Considering the wide latitude afforded to counsel during closing arguments, and that this comment was isolated, brief, and not objected to, we do not believe it amounted to improper vouching, nor resulted in palpable error.

**F. The jury instructions did not result in a non-unanimous verdict.**

Sims argues that the instructions to the jury were not sufficiently specific to ensure that the jury could differentiate between the offenses and thus ensure their verdict was unanimous as to all the offenses for which he was convicted. While he did not preserve this issue, we have held that "all unanimous-verdict violations constitute palpable error resulting in manifest injustice." *King v. Commonwealth*, 554 S.W.3d 343, 351 (Ky. 2018).

Sims avers that the date range of "2012 through 2014" and the lack of a specific location in Graves County where the offenses occurred resulted in a non-unanimous verdict for all the offenses. He asserts that given the testimony elicited by the Commonwealth during trial regarding additional and similar uncharged acts, the jury instructions did not guarantee that the jurors all identified the same particular criminal acts upon which they determined guilt. Sims appears to claim that the instructions were duplicitous.[6] Sims cites no case law in support of his claim, instead relying on the general rule that instructions which make it impossible to distinguish which of multiple incidents is being referred to creates a unanimous verdict problem. *See, e.g., Johnson v. Commonwealth*, 405 S.W.3d 439, 449 (Ky. 2013).

In response, the Commonwealth argues that the instructions contained sufficient identifying information under the facts of this case: A.S. was raped

---

[6] Sims also contends that utilization of KRS 501.100, a continuing course of conduct, would have remedied these problems. However, as KRS 501.100 was not effective until April 9, 2016, and could not have been applied in an ex post facto manner to charge the criminal conduct, all of which had occurred before then.

and sexually assaulted by Sims over a three-year period. Since the incidents occurred on an almost nightly basis, A.S. was unable to identify the exact dates. The Commonwealth further maintains that identifying Graves County as the location was sufficient.

Kentucky law is clear that,

> [w]hether the issue is viewed as one of insufficient evidence, or double jeopardy, or denial of a unanimous verdict, when multiple offenses are charged in a single indictment, *the Commonwealth must introduce evidence sufficient to prove each offense and to differentiate each count from the others, and the jury must be separately instructed on each charged offense.*

*King*, 554 S.W.3d at 353–54 (quoting *Miller v. Commonwealth*, 77 S.W.3d 566, 576 (Ky. 2002)).

Our review of the record shows that the jury instructions included the statutorily-required elements of each offense. In *Bennington v. Commonwealth*, this Court addressed a factually-similar situation in which the acts of rape, sodomy and incest were identified by the year in which they occurred. 348 S.W.3d 613 (Ky. 2011). The *Bennington* court held:

> Each instruction refers to a factually distinct crime. While the instructions do not detail the specifics of each particular instance of sodomy, rape, and incest, such as the setting or the exact conduct engaged in, such detail is not required. There is no uncertainty as to which crime the jury convicted of on each count and thus, no deprivation of a unanimous verdict.

*Id.* at 623.

In Sims's case, each of the instruction forms clearly identified the act, based on the evidence presented at trial, that the jury was to consider. For example, the first-degree rape instruction required the jury to find that "in

25

Graves County on or about 2012 through 2014 and before the finding of the indictment herein, he engaged in sexual intercourse with A.S., after showing A.S. pornography AND that A.S. was less than twelve (12) years old." All other instructions provided similar language in terms of year range and Graves County location but specified differentiating conduct pertaining to the offense charged. The Commonwealth was not required to incorporate non-statutory elements into the instructions. Since no uncertainty exists as to the crime the jury convicted of on each count, Sims was not deprived of a unanimous verdict.

### G. The testimony about the victim's behavior did not bolster her testimony nor deprive Sims of a fair trial.

Sims asserts that the testimony about A.S.'s bulimia, self-harming, and changes to her behavior prior to her reporting the abuse was improper bolstering of her veracity and was inadmissible evidence of Child Sexual Abuse Accommodation Syndrome ("CSAAS"). As Sims did not object to this testimony, we will review the merits of his claim under the palpable error standard. RCr 10.26.

Sims directs us to three minutes of A.S.'s two-hour long testimony during which she stated that she was "emotionally messed up" and was in conflict with Sims at the time she came forward with her allegations, and was trying to make him not be attracted to her anymore. A.S. stated that she figured if she became skinny enough through exercise and bulimia that Sims would not compliment her body as much. A.S. further stated that she inflicted self-harm due to her anger about how Sims had treated her. Shena testified

26

that at that time, A.S. was cutting herself. Kam testified that around that time, A.S. was exercising more, losing weight, and eating less.

Sims argues that while this testimony did not explicitly refer to CSAAS, it left the inescapable impression that A.S. was being abused, as evidenced by her behavioral changes around the time she came forward with the allegations. He asserts this testimony improperly bolstered A.S.'s credibility and deprived him of a fair trial. In response, the Commonwealth maintains that the testimony was not CSAAS testimony, but rather was permissible background information, and that A.S.'s testimony was relevant as it explained her mental state at the time and why she decided to disclose the abuse. Additionally, the Commonwealth claims that A.S.'s testimony was admissible because Sims had called her credibility into question.

In general, "[a] witness is not permitted to bolster her own testimony unless and until her credibility has been attacked. However, testimony regarding a witness's background is admissible." *Tackett v. Commonwealth*, 445 S.W.3d 20, 32–33 (Ky. 2014) (internal citations omitted). Regarding CSAAS, "this Court has consistently held that the symptoms, or signs, of the 'so-called' child sexual abuse accommodation syndrome are not admissible" because they lack scientific acceptance. *Blount v. Commonwealth*, 392 S.W.3d 393, 395 (Ky. 2013). The prohibition against this type of evidence is not limited to expert testimony. In *Blount*, this Court found improper the testimony of lay witnesses, including the child victim's mother, that after learning what behavioral signs were present in sex abuse victims from the

27

clinical psychologist who counseled them, in retrospect, the child had displayed signs of CSAAS all along. *Id.* at 395–96. The *Blount* court held that the "trial court incorrectly assumed that testimony regarding the child's changed demeanor was permissible so long as it is not presented as expert testimony linking it to the sexual abuse alleged in the indictment." *Id.* at 397. Nonetheless, the Court concluded that reversal of the defendant's conviction was not warranted as the trial court had provided the curative measure (admonishment) that the defendant had requested. *Id.* at 398.

Unlike in *Blount*, Shena and Kam did not link A.S.'s behavior to anything they learned in counseling, or from a counselor, or lend it any scientific validity. *See Tackett*, 445 S.W.3d at 35 (noting that "[u]nlike the parents in *Blount*, [victim's mother] did not attempt to tie [victim's] vaginal rashes and overactive gag reflex to anything she learned during counseling or to anything she learned from a counselor[]"). In *Tackett*, we further held that to the extent the victim's testimony about her participation in Beta Club at school – a club for students who are involved in community service and who have good grades and character - amounted to bolstering, it was permissible because the defendant had put the victim's credibility at issue. *Id.* at 34. The *Tackett* court concluded that the defendant's unpreserved claim of error did not mandate reversal. *Id.*

Here, Sims put A.S.'s credibility at issue; thus, A.S. was permitted to explain the circumstances of what led to her reporting the alleged abuse, including her relevant state of mind at the time. Furthermore, Shena and Kam

28

testified to behavior they observed in A.S. – they did not attribute that behavior to Sims's abuse, nor were they asked to. Moreover, their testimony on A.S.'s self-harm and exercise/eating habits was approximately one minute cumulatively. As in *Blount,* Sims did not ask the trial court for any type of relief and has not shown why we should grant him relief he did not seek. We see no credible evidence that the testimony at issue changed the result of the trial or resulted in a manifest injustice to Sims.

**H. No cumulative error occurred.**

Lastly, Sims contends that his conviction should be reversed based on cumulative error, "the doctrine under which multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). Again, this issue is not preserved, so we review only for palpable error. RCr 10.26. Cumulative error has been found "where the individual errors were themselves substantial, bordering, at least, on the prejudicial." *Brown*, 313 S.W.3d at 631. Since none of the errors in this case have been found individually substantial or prejudicial, no cumulative error resulted.

### III.   Conclusion

For the foregoing reasons, we affirm the judgment of the Graves Circuit Court.

All sitting. Conley, Hughes, Lambert and VanMeter, JJ., concur. Minton, C.J., concurs in result only with separate opinion in which Keller and Nickell, JJ, join.

29

Minton, CJ., concurring in result only:

I concur with the result reached by the majority, but I respectfully disagree with the majority on two issues: (1) the admissibility of past-acts evidence under KRE 404(b)(1), and (2) the exclusion of testimony regarding the victim's general truthfulness.

I explain at length my similar concerns about the admission of past-acts evidence in my separate opinion concurring in result only in *Jackson v. Commonwealth*, 19-SC-0597-MR, a case we render today. I respectfully disagree with the majority in this case for essentially the same reasons I stated in *Jackson.* I would find it an abuse of discretion to allow uncharged acts of past criminal conduct to be admitted without a legitimate and probative nonpropensity purpose, even where similar acts of abuse are alleged to have been perpetrated against the same victim. The accepted purposes in the present case—proving "motive, intent, opportunity, and common scheme"—as in *Jackson*, are inadequate at best and pretextual worst. So admitting this evidence under KRE 404(b)(1) was error, in my view. And since Sims's past acts were not alternatively inextricable from the acts with which Sims was charged, it would also have been an abuse of discretion to admit the evidence under KRE 404(b)(2), as well.

None of the purported evidentiary uses were probative of substantive elements of the crimes charged, nor were the issues genuinely disputed by Sims. The true issue was whether Sims committed the alleged acts on the many occasions for which he was charged. Sims's motive to abuse, obviously

30

sexual, was irrelevant to the charges of rape, sodomy, and incest.[7]  Nor is intent an element of rape, sodomy, or incest, and Sims's past acts were not truly being used to demonstrate his actual volitional decision to commit the particular criminal acts for which he was charged.  Opportunity was also never in dispute or at issue, because she lived in the same residence as the alleged perpetrator, her father.  And common scheme did not need to be proved here.  Like motive, common scheme typically requires a certain specificity of criminal activity and is typically only used to prove the identity of a criminal perpetrator.  The true identity of A.S.'s abuser was not truly in question as it might be in cases where identity is unknown but could belong to any number of possible perpetrators, as with an unwitnessed murder or anonymous rape.  Here, it was either Sims or no one, and Sims did not admit the abuse occurred while arguing an alternate perpetrator.

This "same victim, same crime" generalization has been applied too liberally, even within the discretion we give to trial courts in admitting or excluding evidence.  This allows the prosecution too freely to prove a defendant committed a particular criminal act by offering evidence of uncharged past acts, which the Kentucky Rules of Evidence does not currently allow.  While there are some cases where past acts, even those quite dissimilar from the crime charged, might be probative of nonpropensity circumstances, that is not

---

[7] *See Isaacs v. Commonwealth*, 553 S.W.2d 843, 845 (Ky. 1977).

31

so here. The majority appears to have accepted what seem to be pretextual uses for the past acts. I would not.

Finally, the second issue, it was also an abuse of discretion, in my view, for the trial court to prohibit defense counsel's questions of the victim's stepmother regarding her opinion of A.S.'s truthfulness as a person. KRE 608(a) allows testimony of another witness, even the victim, regarding general opinion or community reputation for truthfulness of a witness: "The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation," and so long as, paraphrasing, the evidence goes to the witness's character for truthfulness or untruthfulness, and evidence of truthfulness is offered only after the witness's character for truthfulness has been attacked. While defense counsel was properly prohibited from inquiring into specific instances of untruthfulness, including whether A.S. "had ever gotten in trouble with her parents for lying," asking A.S.'s stepmother whether A.S. tended to be or was generally untruthful, e.g., "She didn't often tell the truth?", was proper under KRE 608 as an elicitation of opinion. The quoted lines of questioning in the majority opinion did not otherwise present an example of inquiry into a specific instance of untruthfulness. While the majority concludes "the trial court did not abuse its discretion in barring Sims's inquiries into A.S.'s *tendency* to be untruthful," to the contrary, that *tendency*, without delving into specific acts, is exactly what may be elicited in the form of an opinion or reputation under KRE 608(a). *See Linville v. Commonwealth*, No. 2011-SC-000109-MR, 2012 WL 2362489, at *8 (Ky. June 21, 2012) (holding trial court

32

erred by disallowing, per se, opinion testimony by victim's mother and grandmother as to the victim's truthfulness in prosecution for unlawful imprisonment and other offenses).

Even though I disagree with my colleagues in the majority on these two issues, I would still uphold the judgment, finding these issues did not reasonably affect the outcome of Sims's trial, if for no other reason than the sheer number of acts being properly prosecuted in the same trial could not have been meaningfully augmented or diminished by *more* past acts. The jury's belief in Sims's guilt was probably not at all affected. And its decision to believe A.S.'s testimony was not made or broken by the stepmother's opinion A.S. was not truthful, which the jury heard anyway. Keller and Nickell, JJ., join.

COUNSEL FOR APPELLANT:

Steven Nathan Goens
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Thomas Allen Van De Rostyne
Assistant Attorney General